[L.A. No. 30721. Sept. 29, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
PACIFIC LAND RESEARCH COMPANY et al.,
Defendants and Appellants.

**COUNSEL**

Lipofsky & Schulman, Inc., Louis A. Lipofsky and William S. Brunsten for Defendants and Appellants.

Gibson, Dunn & Crutcher, Richard Chernick and Philip W. Boesch, Jr., as Amici Curiae on behalf of Defendants and Appellants.

Evelle J. Younger, Attorney General, Arthur C. de Goede, Assistant Attorney General, Herschel T. Elkins, Sanford H. Feldman, Dennis M. Klimmek, Deputy Attorneys General, Albert M. Leddy, District Attorney, Ronald L. Shumaker and H. Dennis Beaver, Deputy District Attorneys, for Plaintiff and Respondent.

Edwin L. Miller, Jr., District Attorney (San Diego), M. James Lorenz, Charles R. Hayes, Robert C. Fellmeth, Deputy District Attorneys,

Richard A. Elbrecht, Richard G. Fathy, Steven M. Fleisher and Joseph Garcia as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MOSK, J.**—The Attorney General and the District Attorney of Kern County brought an action in the name of the People, alleging that defendants, in making sales of land to the public, violated various provisions of law by subdividing without notifying the Real Estate Commissioner or receiving his permission to subdivide, in violation of the Subdivided Lands Act (Bus. & Prof. Code, § 11000 et seq.)[1] and by making misrepresentations in the sale of such land (§ 17500),[2] and that this conduct constituted unfair competition (Civ. Code, § 3369).[3] The complaint sought not only injunctive relief (§ 17535)[4] and the imposition of civil penalties (§ 17536; Civ. Code, § 3370.1)[5] but restitution on behalf of the vendees who had purchased the land. The recovery of restitution is authorized by section 17535.

[1] All references are to the Business and Professions Code, unless otherwise noted. Section 11000 provides in part, " 'Subdivided lands' and 'subdivision' refer to . . . land divided or proposed to be divided for the purpose of sale or lease or financing, whether immediate or future, into five or more lots or parcels . . . ."

[2] Section 17500 provides in part, "It is unlawful for any person . . . corporation . . . or any employee thereof with intent . . . to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make . . . before the public in this State, in any newspaper or other publication, or any advertising device . . . any statement, concerning such real or personal property . . . which is untrue or misleading . . . ."

[3] Section 3369 provides in subdivision 2: "Any person performing or proposing to perform any act of unfair competition within this State may be enjoined in any court of competent jurisdiction." Subdivision 3 of the section defines unfair competition to include any act denounced by sections 17500 through 17535 of the Business and Professions Code or any unlawful business practice.

[4] Section 17535 provides in part, "Any person, corporation . . . which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make . . . orders . . . which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

"Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney . . . in the name of the people of the State of California upon their own complaint or upon the complaint of . . . any person acting for the interests of itself, its members or the general public."

[5] Section 17536, subdivision (a), provides in part, "Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the People of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney . . . ."

Section 3370.1 of the Civil Code provides in part, "Any person who violates any

The trial court granted a preliminary injunction prohibiting defendants from making misrepresentations in the sale of the land referred to in the complaint, and from spending or removing from California any monies received for sales which violated the Subdivided Lands Act (hereinafter the act). On this appeal, defendants contend that the inclusion in the complaint of a prayer for restitution to the vendees requires that the action be treated as a class suit; thus all the procedural safeguards, such as notice to the class, must be complied with to support the injunction. They assert also that there was insufficient evidence to justify the injunction and that the terms thereof are so vague that defendants were deprived of due process in that they cannot know what conduct is prohibited.

The complaint alleges that defendants are the owners or agents of the owners of land in Kern and Riverside Counties, and that they solicited purchasers for the land by false and misleading statements regarding such matters as the investment potential of the property. All the defendants are alleged to be agents of one another.

A separate cause of action alleges that some of the defendants purchased certain property identified as sections 14, 24 and 26 in a specified area of Kern County, and divided the land in a manner designed to evade the act. It is alleged that the property was purchased from three of the defendants who first divided it among themselves and then sold it to other defendants for a nominal sum; that the grantees in turn further divided the property among themselves, and sold lots to more than 50 purchasers. These activities, it is averred, created subdivisions as defined in section 11000, and defendants failed to comply with the provisions of the Business and Professions Code relating to subdivisions. Other transactions in Kern County and in Riverside County were also alleged to violate the act.

The complaint sought a temporary restraining order, preliminary and permanent injunctions, and a civil penalty of $2,500 for each violation. The trial court issued an order to show cause and a preliminary injunction, based upon the pleadings and the declarations filed by the People in support of their complaint. The injunction restrains defendants from violating the act and the other provisions referred to above. Paragraph 4 thereof prohibits defendants from "[s]pending, transferring,

---

provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation . . . ."

encumbering, or removing from California any monies received in payment for lands sold under contracts or agreements of sale where said land was sold without complying with the requirements of the Subdivided Land Law . . . ."

Defendants denied the allegations of the complaint in their answer, and at the hearing on the order to show cause they denied violating any of the provisions to which the injunction relates. They assert on this appeal that the restraints placed upon them by paragraph 4 are invalid.

I

We consider first whether the injunction is invalid because an action brought by the People under section 17535 is in the nature of a class action to the extent that restitution is sought for the victims of defendants' alleged illegal activity, and therefore defendants are entitled to the same procedural safeguards as in a class action brought by a private party. The issuance of the injunction was based upon a preliminary determination of the merits of the People's action, and defendants assert they were deprived of due process of law because that determination was made before the vendees on whose behalf restitution was sought were notified of the action and required to elect whether or not to join therein. Defendants rely on *Home Savings & Loan Assn.* v. *Superior Court* (1975) 42 Cal.App.3d 1006 [117 Cal.Rptr. 485] (*Home I*), *Home Savings & Loan Assn.* v. *Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal.Rptr. 511] (*Home II*), and *Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140].

*Home I* and *Home II* hold that a defendant in a class action has a due process right to secure a determination of the issues relating to the suitability of the action as a class matter as well as the composition of the class and the form of notice to the members, prior to determination of the merits of the action. The rationale of this rule is: unless a decision on the merits is postponed until after the class issues are decided, a defendant is subject to "one-way intervention," which would allow potential class members to elect whether to join in the action depending upon the outcome of the decision on the merits. Thus, if the merits were decided favorably to the class, and notice followed such determination, most class members would join in the action, whereas they would decline if the determination was against the class.

From a defendant's viewpoint, this is said to result in "an open-ended lawsuit that cannot be defeated, cannot be settled, and cannot be adjudicated." (*Home I, supra,* 42 Cal.App.3d at p. 1011.) Failure to require notification of the class before a decision on the merits prevents a binding adjudication against the class because members of the class who were not notified are not barred by the determination in the defendant's favor since they were not parties. On the other hand, a defendant who loses an action brought by individual class members may be estopped under the doctrine of collateral estoppel to deny the binding effect of the judgment against him in a subsequent action brought by other class members. Moreover, a defendant is entitled to know, before final determination of the substantive issues in a class action, the full potential consequences and liability that may attach to a judgment against him.

*Eisen* holds that rule 23 of the Federal Rules of Civil Procedure prohibits a court from inquiring into the merits of a suit for the purpose of deciding which party should bear the cost of notice prior to determining whether a class action may be maintained. Such a procedure, it is held, may result in substantial prejudice to a defendant since it is not accompanied by the traditional safeguards applicable to civil trials.

We assume, for the purposes of the present proceeding, that the reasoning in the foregoing cases is sound. ■ Nevertheless, we do not agree that consumer protection actions brought by the People, seeking injunctive relief, civil penalties and restitution, are the equivalent of class actions brought by private parties, requiring the same safeguards to protect a defendant from multiple suits and other harmful consequences.

An action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained. Civil penalties, which are paid to the government (§ 17536, subds. (b) and (c); Civ. Code, § 3370.1) are designed to penalize a defendant for past illegal conduct. The request for restitution on behalf of vendees in such an action is only ancillary to the primary remedies sought for the benefit of the public. (*People* v. *Superior Court (Jayhill)* 9 Cal.3d 283, 286 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191].) While restitution would benefit the vendees by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions.

Furthermore, an action by the People lacks the fundamental attributes of a consumer class action filed by a private party. The Attorney General or other governmental official who files the action is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests (Civ. Code, § 1781, subd. (b)(4))[6] and the claims and defenses are not typical of the class (Civ. Code, § 1781, subd. (b)(3)).[7]

In spite of these obvious differences between the two types of actions, defendants insist that because the People seek restitution of monies obtained as a result of the allegedly illegal transactions, they are in precisely the same position as a defendant in a class action brought by private individuals when adjudication of the merits occurs before notice to the potential class members. This is, they urge, because the vendees on whose behalf the People seek restitution enjoy the benefits of an adjudication on the merits in their favor by virtue of the issuance of the preliminary injunction, without being bound by an ultimate determination for defendants; thus injunctive relief should not be granted in an action brought by the People if the complaint includes a claim for restitution, unless the class is notified prior to its issuance.

As between the two types of proceedings there is a crucial difference which emanates from the character of the People's lawsuit as a law enforcement action.[8] Whereas a defendant in a class action brought by a private individual may prevent adjudication of the merits under the *Home Savings* rule prior to a determination of the composition of the class, he does not have similar rights in an action brought by the People under section 17535, even if the complaint does not include a prayer for restitution.

If the Attorney General does not seek restitution in the complaint but confines his prayer for relief to an injunction and civil penalties, there is

---

[6] For example, in settlement negotiations the Attorney General might find it advisable to exact a penalty to be paid to the public treasury and to obtain injunctive relief rather than insisting upon restitution for defrauded vendees.

[7] Individual actions are aimed at recovery of money and are usually based upon the theories of fraud or breach of contract. Reliance and actual damages must be shown. In an action by the People, on the other hand, only the violation of statute is necessary to justify injunctive relief and civil penalties.

[8] Defendants correctly point out that section 17535 allows private persons to seek the remedies set forth therein. Our determination here is confined to the rights of defendants in a suit filed by the People under that section.

an inevitable potential of the vendees taking advantage of a preliminary or final determination in their favor. For example, in the present case if the People had not sought restitution there would have been no occasion to notify the vendees of the action. Nevertheless, the trial court could have ordered restitution on its own motion at the conclusion of the action on the merits under section 17535. Alternatively, the vendees could have sought to intervene after the preliminary injunction was issued and a preliminary determination on the merits made, and the trial court could have allowed intervention on the theory that "there is risk their contributions to the venture will be used primarily to pay statutory penalties . . . ." (*People* v. *Superior Court (Good)* 17 Cal.3d 732, 737 [131 Cal.Rptr. 800, 552 P.2d 760].)[9] However, the vendees could merely await the outcome of the People's action and seek restitution in a later suit in which the defendants, if they lost in the first action, might be subject to collateral estoppel while the plaintiff-vendees would not be bound by a determination in defendants' favor in that action.

These consequences flow not from any inherent unfairness in the procedures but because the People's action is fundamentally for the benefit of the public even though founded upon the same violations of law which form the basis of the claim for restitution.

Since defendants are subject to substantially identical burdens when the People do not seek restitution on behalf of the vendees in their complaint as where restitution is sought, they suffer no additional hardship because the complaint also contains a prayer for restitution, and they should be afforded no additional advantages.

If we were to hold that the inclusion of a claim for restitution converts the People's action under section 17535 into a class action so that not

---

[9]Although defendants assert that a trial court may not grant restitution without notifying the vendees of the People's action and giving them the opportunity to join therein, we reject this contention. Even in the absence of the specific authorization contained in section 17535, a trial court has the inherent power to order restitution as a form of ancillary relief. (*People* v. *Superior Court (Jayhill), supra,* 9 Cal.3d 283, 286.) We know of no authority holding that the exercise of this power has the inevitable effect of converting the People's action into a class action.

We note that, in view of the trial court's power to grant restitution, it cannot be said that intervention by the vendees would enlarge the issues or change the nature of the action filed by the People. In *People* v. *Superior Court (Good), supra,* 17 Cal.3d 732, 737, we held, in answer to a contention, that intervention was proper since both the People's complaint and the complaint in intervention by the class sought restitution, but it does not follow that intervention by the vendees would be improper in a case in which the People did not pray for restitution.

even a preliminary determination of the merits could be made before compliance with the class action notice requirements, the result would seriously hamper the public interest without affording any substantial benefits to a defendant. In order to avoid the delays inherent in complying with class action procedures, the People might be forced to abandon the claim for restitution whenever immediate injunctive relief was essential to protect consumers against further illegal acts of the defendant. Yet such a course would not provide any significant benefits to a defendant since even in the absence of a prayer for restitution in the People's complaint the vendees could secure a determination on the merits by the means set out above before determining their ultimate method of proceeding.

There are other reasons why the *Home Savings* rule is not applicable to an action by the People under sections 17535 and 17536. As we have seen, one basis of that rule is the need for defendants to know prior to final determination of the merits of the action the potential consequences which may attach to an adverse judgment. Presumably, the primary reason they require this information is to assess the resources which should be expended in the defense of the litigation. Here the People seek civil penalties of $2,500 for each violation, which would ordinarily provide a defendant with sufficient incentive to mount a vigorous defense, even if a claim for restitution is not made.

Finally, we observe that if the People, with their vast resources, fail to prevail on the merits of their suit there is little prospect that a defendant will be harassed by subsequent suits instituted by vendees seeking restitution. Various defenses available in an action by private parties may not be raised to defend against an action filed by the People. For example, reliance is not a necessary element of an action for civil penalties and injunctive relief. If, in spite of such an advantage the People fail to prevail on the merits, there is little likelihood that private parties will expend their resources to seek restitution upon the same facts in a subsequent action. In this situation, "renewed harassment is nothing but a remote theoretical possibility." (See *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 969 [124 Cal.Rptr. 376].)[10]

---

[10] In *Kugler* v. *Romain* (1971) 58 N.J. 522 [279 A.2d 640], it was held that the Attorney General of New Jersey could bring an action for an injunction and restitution "in the nature of a class action" on behalf of defrauded buyers, utilizing the procedures relating to class actions. Defendants rely upon this language as indicating that class action procedures are applicable in an action by a public officer for restitution on behalf of defrauded vendees. The People point out, however, that the merits of the action were decided in that case prior to notification of the class. In any event, the matter was settled

## II

■ We come, then, to defendants' assertion that the evidence before the trial court was insufficient to justify the injunction. ■ To secure a preliminary injunction the People were required to show, by evidence which would be admissible in open court, that, pending a trial on the merits, defendants should be restrained from exercising the right claimed by them. The purpose of the injunction is to preserve the status quo until a final determination is made upon the merits, and the issue before the court was whether defendants would suffer greater harm from its issuance than the People would suffer from its refusal. In making this assessment, the court was required to determine whether there was a reasonable probability that the People would prevail on the merits. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 526-529 [67 Cal.Rptr. 761, 439 P.2d 889].)

■ Defendants contend that the complaint declarations offered by the People, which set forth the alleged misrepresentations, were insufficient to demonstrate that they had violated the act since there was no evidence that they had subdivided land into five parcels.

Section 11000 defines a subdivision as land divided or proposed to be divided into five or more parcels for purposes of sale. Before offering subdivided land for sale, the Real Estate Commissioner must be notified of the intention to sell subdivided land (§ 11010) and a public report obtained (§ 11018), which must be furnished to prospective purchasers (§ 11018.1). Contiguity of the land is not required under section 11000 in order to constitute subdivision, but if the parcels are not contiguous the question whether the land should be treated as one subdivision project depends upon whether the parcels are "grouped in a sufficiently restricted area." (Cal. Admin. Code, tit. 10, § 2803.)

Defendants offer a number of technical objections to the form of the declarations, none of which we find meritorious.[11] They also object to the

---

the following year in a New Jersey case in which it was held that the Attorney General was not required to serve notice prior to judgment upon the victims of fraudulent and deceptive practices in whose behalf he sought restitution of funds illegally obtained. (*Kugler* v. *Koscot Interplanetary, Inc.* (1972) 120 N.J.Super. 216 [293 A.2d 682, 693].)

[11]For example, defendants complain that the declaration of Mrs. Charles Murphy does not comply with the mandate of section 2015.5 of the Code of Civil Procedure that it state the place of execution and is true under penalty of perjury. Mrs. Murphy's address is immediately below her signature. Moreover, she makes the declaration under penalty of perjury. The declaration substantially complies with section 2015.5. (See *Pacific Air Lines, Inc.* v. *Superior Court* (1965) 231 Cal.App.2d 587, 589 [42 Cal.Rptr. 68].)

two principal declarations offered by the People to establish that defendants had subdivided their land. These were made by Glenn Kaufman, a certified public accountant employed by the Department of Justice, and Randall L. Abbott, a planner for the Kern County Planning Division. Defendants challenge these declarations on the grounds that the statements therein constituted hearsay, violated the best evidence rule, and contained inadmissible opinion evidence. Without encumbering this opinion with needless detail, upon analysis we agree that these declarations were inadmissible and that the trial court erred in considering them in issuing the injunction.

Nevertheless, even without the offending declarations, the evidence is sufficient to support the trial court's determination that it was probable the People would demonstrate upon a trial of the merits that defendants had subdivided land in violation of the act. Three purchasers filed affidavits that they had bought land from defendants; two had purchased lots in section 24 and one in section 26. While the two sections are not contiguous, they are joined at one corner. The People assert that these purchases are sufficient to constitute the division of land into five parcels since defendants carved two parcels out of one section and one out of another, and they owned the remainder of the two sections, making five parcels in all.[12]

Whether or not such an arrangement would constitute a subdivision as defined in section 11000 in all circumstances we need not decide. In the present case, however, it is clear that defendants were in the business of selling land, some of the individual defendants were officers common to more than one of the corporate defendants, the two sections in which they had sold lots joined one another at one corner and the sales or solicitations of the purchasers occurred within a few months of one another. There was, therefore, at least strong circumstantial evidence that the remainder of sections 24 and 26 were also intended by defendants for sale. This evidence was sufficient to support an inference that the sale of the lots in the two sections constituted a single project, and the trial court was justified in concluding that the People would probably be able to

---

[12]There was sufficient evidence for the purposes of the preliminary injunction to conclude that defendants owned the remainder of parcels 24 and 26. An officer of several of the corporate defendants admitted that he and other defendants had purchased 640 acres of land, including sections 24 and 26, and defendants did not claim that they did not own the land remaining in those sections after the sales alleged in the complaint were made. The sales were negotiated by individual defendants, who were officers of a corporate defendant or by a representative of one of the corporate defendants.

demonstrate that defendants had violated the act by dividing land into five or more parcels for purposes of sale.[13]

### III

■ Finally, defendants insist that the injunction is so vague that they cannot know what conduct is prohibited. (*In re Berry* (1968) 68 Cal.2d 137, 155-157 [65 Cal.Rptr. 273, 436 P.2d 273].) They challenge the portion of the injunction which prohibits them from spending or transferring money in payment of land "where said land was sold without complying with the requirements of the Subdivided Land Law . . . ."

Defendants complain that, since the injunction does not describe any specific parcel of land, they cannot determine what land is subject to its terms. However, when the language of the injunction is interpreted in the light of the record (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d 512, 534), defendants are sufficiently apprised of the land involved. The complaint refers only to land in Kern and Riverside Counties, and it is only sales of land located in those counties to which the injunction relates.[14]

Nor do we find merit in the assertion that it cannot be determined with sufficient certainty what monies may be spent since the ultimate issue in the case is whether defendants violated the act, and until there is a full adjudication on the merits they cannot know whether any sales constituted violations. The issuance of the injunction represents a preliminary determination by the trial court that defendants probably violated the act in making some sales, e.g., the sales to the three purchasers whose affidavits are discussed above. It is within defendants'

---

[13]Defendants make an elaborate argument that if section 11000 is interpreted as applying to divisions of land which result in the creation of five parcels by virtue of the fact that the owner retains some of the land remaining after the sales, the section would be applied to divisions clearly not intended by the Legislature. They reason that, since section 11000 applies to noncontiguous parcels and there are no time limits contained in the section, land situated in separate parts of the state and sold many years apart could be found to constitute a subdivision merely because it is owned by one seller. However, as section 2803 of title 10 of the California Administrative Code makes clear, noncontiguous land is subject to the provisions of the act only if it may reasonably constitute a single subdivision project.

[14]While it is true that the affidavits submitted by the People in support of the injunction refer only to land in Kern County, the People demonstrated the probability that defendants were engaged in violating the act as to some sales in Riverside as well. It was not necessary that each alleged violation be shown before the injunction was issued.

own knowledge whether they are receiving funds from other purchasers as a result of similar sales.

The order granting the People a preliminary injunction is affirmed.

Tobriner, Acting C. J., Clark, J., Richardson, J., Manuel, J., Sullivan, J.,* and Thompson (Homer B.), J.,† concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council.