[Civ. No. 23650. Fourth Dist., Div. Two. May 26, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES JAMES et al., Defendants and Appellants.

28

COUNSEL

Solomon, McKibbin & Mayo, Michael K. McKibbin and Thomas G. Harman for Defendants and Appellants.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, John J. Ryan and Thomas K. Buck, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

TAMURA, J.—This is an appeal from an order granting a preliminary injunction in a suit brought by the People charging defendants with unfair business practices under Business and Professions Code sections 17200 et seq.[1] ■ In reviewing an order granting a preliminary injunction, we must view the facts favorably to the prevailing party,

---

[1]Unless otherwise indicated, all section references in this opinion are to the Business and Professions Code.

Section 17200 provides: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or

resolving all conflicts in its favor and drawing all inferences which can reasonably be made in support of the trial court's order. (E.g., *North Carolina Dairy Foundation, Inc.* v. *Foremost-McKesson, Inc.* (1979) 92 Cal.App.3d 98, 104 [154 Cal.Rptr. 794]; *People* v. *Columbia Research Corp.*(1977) 71 Cal.App.3d 607, 609-610 [139 Cal.Rptr. 517]; see also *Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 508-509 [289 P.2d 476, 47 A.L.R.2d 1349].) Keeping this standard in mind, we turn to the facts of the case at bench:

Defendant Eldon Bagstad (Bagstad) is the proprietor of El Don Liquor which is located at a busy corner on the Pacific Coast Highway just across the street from the Huntington Beach pier and beach. Bagstad owns or leases spaces for 8 to 10 vehicles on the side and to the rear of his store for customer parking. When this suit arose, the wall of the liquor store facing the side lot was posted with a four-by-six-foot sign stating "Customer Parking for El Don Liquor only. Violators will be towed away. C.V.C. 22658A H.B.P.D. 536-5311." The rear lot was posted with two much smaller signs stating "El Don parking only. Unauthorized vehicles will be towed away at vehicle owner's expense. C.V.C. 22658a H.B.P.D. 536-5311 Ace Towing 842-7402."[2]

---

misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

Section 17203 provides: "Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

Section 17204 provides: "Actions for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney or any city attorney of a city having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city or city and county having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

[2]Vehicle Code section 22658 provides: "(a) The owner or person in lawful possession of any private property may, subsequent to notifying by telephone or, if impractical, by the most expeditious means available, the city police or county sheriff, whichever is appropriate, cause the removal of a vehicle parked on such property to the nearest public garage, if there is displayed, in plain view on the property, a sign prohibiting public parking and containing the telephone number of the local traffic law enforcement agency. The person causing removal of such vehicle shall, if the person knows or is able to ascertain from the registration records of the Department of Motor Vehicles the name and address of the registered and legal owner thereof, immediately give, or cause to be given, notice in writing to such registered and legal owner of the fact of such removal,

Bagstad apparently had experienced problems with congestion of his parking facilities for some time. According to the declaration of the owner of an automotive repair company, Bagstad approached him in 1975, and again in 1978, concerning towing vehicles from the El Don parking lot. Each time, Bagstad proposed that the declarant pay him a portion of the charges which he would collect from persons whose vehicles were thus towed. Declarant refused Bagstad's proposals.

Defendant Charles James (James) is the proprietor of Ace Tow Service (Ace). He operates tow trucks and a storage garage. At least part of his business is what is known as "private property impounding," the removal and storage of vehicles parked on private property authorized by Vehicle Code section 22658. (See fn. 2, *ante.*) Vehicle Code section 22851 in turn grants keepers of impound garages liens for towage and storage costs on impounded vehicles which have been removed to their garages.[3]

Sometime before December 1979, James and Bagstad entered into a contract under which Ace would tow vehicles away from the El Don

---

the grounds for the removal, and indicate the place to which such vehicle has been removed. In the event the vehicle is stored in a public garage, a copy of the notice shall be given to the proprietor of the garage. The notice provided for in this section shall include the amount of mileage on the vehicle at the time of removal. If the person does not know and is not able to ascertain the name of the owner or for any other reason is unable to give the notice to the owner as provided in this section, such person causing removal of such vehicle shall comply with the requirements of Section 22853 relating to notice in the same manner as applicable to an officer removing a vehicle from private property. The provisions of this section shall not limit or affect any right or remedy which the owner or person in lawful possession of private property may have by virtue of other provisions of law authorizing the removal of a vehicle parked upon such property.

"(b) The owner of a vehicle removed from private property pursuant to subdivision (a) may recover for any damage to the vehicle resulting from any intentional or negligent act of any person causing the removal of, or removing, the vehicle."

[3]Vehicle Code section 22851 provides: "(a) Whenever a vehicle has been removed to a garage under the provisions of this chapter and the keeper of the garage has received the notice or notices as provided herein, the keeper shall have a lien dependent upon possession for his compensation for towage and for caring for and keeping safe such vehicle for a period not exceeding 60 days or, if an application for an authorization to conduct a lien sale has been filed pursuant to Section 3068.1 of the Civil Code within 30 days after the removal of the vehicle to the garage, 120 days and, if the vehicle is not recovered by the owner within such period or the owner is unknown, the keeper of the garage may satisfy his lien in the manner prescribed in this article. The lien shall *not be assigned.*

"(b) No lien shall attach to any personal property in or on the vehicle. Such personal property in or on the vehicle shall be given to the registered owner or such owner's authorized agent upon demand. The lien holder shall not be responsible for property after any vehicle has been disposed of pursuant to this chapter."

parking lot. Under the statute, the city police must be notified before an impound is to take place. (See fn. 2, *ante.*) In Huntington Beach, this notification is accomplished by phoning the police department, identifying the tow service, the vehicle to be impounded, and the property from which the vehicle is being removed, and having a private property impound number (PPI) assigned to the transaction. PPI records of the Huntington Beach Police Department show that during the two-month period from December 22, 1979, through February 21, 1980, the department was notified of 496 PPI's. In 343 of these, Ace was the towing agency and of the 343 Ace tows, 291 were from the El Don Liquor parking lot.

In March 1980, the People filed the instant action for an injunction and civil penalties alleging that James and Bagstad were engaged in unlawful business practices in violation of section 17200 et seq. The complaint alleged that the warning signs posted by Bagstad on the El Don lot were not in plain view of all who parked in the lot and that the signs were ambiguous in that they did not specify how long persons who intended to or had patronized El Don Liquor might leave their cars in the lot. The People also alleged that James had engaged in unlawful practices in hoisting and towing cars from the lot, including charging unconscionable fees, intimidating vehicle owners by threatening them with bodily harm, damaging vehicles, failing to safeguard personal property left in vehicles, charging "let-down fees" before releasing vehicles which had been hoisted for towing but not yet removed from the lot, and making false representations concerning the existence of liens and other rights in exacting charges for releases of such hoisted vehicles, all in violation of Civil Code section 1770, subdivision (n).[4] Finally, the People alleged that James was paying Bagstad a "kickback" fee for authorizing removal of cars from the El Don lot.

The People sought to enjoin Bagstad from authorizing impounds unless his lot were posted with clearly visible signs stating a time limit for customer parking, and from receiving kickbacks for authorizing impounds. The complaint also prayed that James be prevented from refusing to surrender a hoisted car to its owner or operator unless a

---

[4]Civil Code section 1770, subdivision (n), provides: "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: ... [¶] (n) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

"let-down fee" were paid, from making false representations concerning liens and other rights, and from forcing vehicle owners to waive claims for damages to their vehicles before releasing their vehicles.

All parties stipulated to a temporary restraining order and a show cause hearing was held on the People's application for a preliminary injunction. At the hearing, the People introduced approximately 45 declarations of persons whose vehicles had been hoisted or towed from the El Don parking lot between December 22, 1979, and February 21, 1980. The declarations illustrated a pattern of business practices followed by James and Bagstad in authorizing and completing vehicle impounds. An Ace tow truck was stationed on the street near the El Don lot much of the time. As soon as a person who had parked a vehicle on the El Don lot left the premises, the tow truck would come onto the lot and immediately hoist the vehicle for towing. The tow truck driver would then wait for a short time (called a "courtesy" period) to see if the driver were coming right back. If the driver came back within a few minutes, he or she was charged a "let-down" fee (usually $40) before the car was lowered to the ground. The fee was demanded in cash, and a "standby" fee of $1 per minute was charged for any extra time it took for the driver to obtain the cash to pay the fee. If the driver failed to return within the "courtesy" period, or was unable to pay the "let-down fee," the vehicle was towed to James' impound garage. James' tow truck operators often intimidated and threatened persons who were reluctant to pay the "let-down fee," and asserted lien and other rights to justify their refusal to lower vehicles without payment.

The business practices challenged by the People were not confined to activities on the El Don premises. The declarations revealed that Ace employees also engaged in intimidation and misrepresentation when declarants went to the impound garage to retrieve their vehicles. One person was charged $10 to get his dog from his impounded van; another was forced to sign a statement that her car was in satisfactory condition when released, though Ace had damaged it during towing and storage; still another was told that Ace could charge anything it wanted to for the release of the car. Though the basic tow fee charged by Ace was $40, and the storage fee per day (or any part thereof) was $5, vehicle owners were customarily charged incidental fees for other services so that the average fee for impoundment for one day was approximately $67, and could be as high as $83. The other services included opening a locked car for towing purposes, straightening a locked steering wheel for towing purposes, use of a double hook in towing, dropping the vehi-

cle's linkage for towing, night release of vehicle, and Sunday release of vehicle. Fees for these extra services ranged from $7.50 to $15 per service.

Some of the declarants whose vehicles were hoisted or towed stated that they did not see the warning signs posted at El Don, or did not think the signs applied to the spaces in which they parked. Others stated that, since they did make purchases at El Don before their vehicles were hoisted, or planned to make purchases after returning from other errands, they assumed that they qualified as "customers" and could legally park on the El Don lot and go elsewhere. Some declarants stated that they were absent from the parking area for several hours before returning to discover their cars gone; others declared that they had only been gone for periods as brief as 5 to 20 minutes.

After reviewing the declarations and points and authorities in support of and in opposition to the application for a preliminary injunction and hearing oral arguments, the court granted a preliminary injunction. The order enjoined Bagstad from authorizing removal of vehicles from the El Don lot unless warning signs specifying "a time period during which a customer may leave his vehicle parked in the El Don lot" are posted in plain view of all those parking in the lot; enjoined James from charging a fee before releasing a vehicle unless the vehicle has been physically placed in his impound garage; and enjoined James from charging fees for impoundment other than "compensation for towing and storage."[5] Defendants have appealed from this order.

---

[5]The preliminary injunction order provided: "IT IS ORDERED that during the pendency of this action or until further order of the Court, Defendant ELDON WILLARD BAGSTAD, his agents, servants, employees, representatives, successors and all persons acting in concert or participating with or for him with actual or constructive notice of this injunction are hereby enjoined from the following act:

"Authorizing the removal of a vehicle owned by another from the rear and side parking lot of the store currently known as El Don Liquor unless, at the time that the vehicle was parked, there was posted a sign in plain view of the person who parked at that particular location and that sign clearly and unambiguously prohibited the presence of the vehicle at the time of the authorization. For the purpose of this order, a sign permitting customer parking for El Don Liquor is ambiguous unless it specifies a time period during which a customer may leave his vehicle parked in the El Don lot.

"IT IS FURTHER ORDERED that during the pendency of this action or until further order of the Court, Defendant CHARLES JAMES, his agents, servants, employees, representative, successors and all persons acting in concert or participating with or for him with actual or constructive notice of this injunction are hereby enjoined from engaging in or performing any of the following acts:

"A. Refusing to relinquish possession or control of a vehicle to its lawful owner, or to the agent of the lawful owner as evidenced by keys which operate said vehicle and by

On appeal, defendant Bagstad contends that his behavior did not constitute an unfair business practice within the meaning of section 17200. He further contends that the signs he posted fully complied with the requirements of Vehicle Code section 22658, subdivision (a), and that the trial court usurped the function of the Legislature by requiring that a time period be placed on the signs. Bagstad also maintains that the People are not entitled to equitable relief because persons who allegedly had their vehicles illegally towed from the El Don lot had an adequate remedy at law.

Defendant James contends that a vehicle has been "removed to a garage" within the meaning of Vehicle Code section 22851 at the moment the towing company takes possession of it and assumes responsibility for its safekeeping; consequently, he argues, the trial court erred in enjoining him from conditioning release of a seized vehicle on the payment of a fee unless the vehicle has been physically placed in his garage. He also contends that the portion of the preliminary injunction enjoining him from charging fees for services other than towing and storage is ambiguous, and that the terms "towing" and "towage" used in the injunction and in Vehicle Code section 22851, respectively, should be interpreted to include all activities which are reasonably necessary to transport an impounded vehicle. He further maintains that the persons whose vehicles are hoisted or towed from El Don's lot have acted unlawfully in parking there, so that the doctrine of "unclean hands" precludes the People from seeking equitable relief. Finally, James contends that the trial court abused its discretion in granting a preliminary injunction since the People would have suffered little hardship from denial of the injunction, while defendants are "immensely" burdened by its issuance.

---

the statement and driver's license of said agent, where said vehicle has been seized as a private property impound and where such vehicle has not yet been removed to a garage as required by California Vehicle Code Section 22851. For the purpose of this order, a vehicle is removed to a garage when it is physically present in that garage, and conditioning the release of a vehicle upon payment of a charge of 'let-down fee' is deemed to be a refusal to relinquish possession or control.

"B. Conditioning the release of a vehicle seized as a private property impound upon payment of a fee other than compensation for towing and storage.

"IT IS FURTHER ORDERED that application for other Preliminary Inju[n]ctive relief is hereby denied.

"DATED: Apr 28 1980
"[s] Ronald H. Prenner
"JUDGE OF THE SUPERIOR COURT"

As we explain below, we have concluded that defendants' contentions are meritless, and that the trial court did not abuse its discretion in granting the preliminary injunction.

## I

DEFENDANTS' COURSE OF CONDUCT AS "UNFAIR BUSINESS PRACTICE"

■ Section 17200, enacted in 1977 as part of a new enforcement arm (§ 17200 et seq.) for the Unfair Practices Act (§ 17000 et seq.) states that "unfair competition shall mean and include unlawful, unfair or fraudulent business practice . . . ." Section 17200 replaces former Civil Code section 3369, subdivision 3, which provided the same broad definition for unfair competition which might, like nuisance, be enjoined in any court of competent jurisdiction. In *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817], our Supreme Court examined the legislative and judicial history of former Civil Code section 3369 at length. (*Id.*, at pp. 108-113.) It concluded that in enacting former Civil Code section 3369, the Legislature established a wide standard for the guidance of courts of equity in restraining all unfair business practices because it felt that "given the creative nature of the scheming mind, . . . a less inclusive standard would not be adequate." (*Id.*, at p. 112.) Quoting an earlier Supreme Court decision, the *Barquis* court enlarged upon its view of former Civil Code section 3369: "'When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one. There is a maxim as old as law that there can be no right without a remedy, and in searching for a precise precedent, an equity court must not lose sight, not only of its power, but of its duty to arrive at a just solution of the problem.'" (*Id.*, quoting *American Philatelic Soc.* v. *Claiborne* (1935) 3 Cal.2d 689, 698-699 [46 P.2d 135]; see *People* v. *McKale* (1979) 25 Cal.3d 626, 631-632 [159 Cal. Rptr. 811, 602 P.2d 731]; *People* v. *E.W.A.P., Inc.* (1980) 106 Cal. App.3d 315, 318-319 [165 Cal.Rptr. 73]; *Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 927 [162 Cal.Rptr. 194].)

In the case at bench, Bagstad contends that, since there are no cases in which section 17200 has been applied to business practices such as those in which he allegedly engaged he cannot be said to have engaged in unfair business practices. When we apply the principles enunciated in *Barquis* to the instant case, the business practices which defendants were shown to be engaged in were manifestly "unlawful, unfair, and

fraudulent." Vehicles were hoisted or towed away without sufficient warning; drivers were subjected to payment of fees to have their cars "let-down" in the parking lot; they were coerced into paying either by physical intimidation or misrepresentation concerning the existence of liens or other rights of the tower; they were charged unconscionable fees to retrieve their vehicles from hoisting and impoundment; and they were forced to waive claims for damage to their property in order to get it back. There was also evidence that Bagstad participated in these practices by authorizing the impounds and taking kickbacks on fees. The fact that defendants' scheme had never been dealt with by the appellate court does not render it any less fundamentally dishonest, unfair, or unlawful. (*Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d 94, 112.)

## II

### VEHICLE CODE SECTION 22658, SUBDIVISION (A)

■ Vehicle Code section 22658, subdivision (a), states in pertinent part that "[t]he owner or person in lawful possession of any private property may, subsequent to notifying . . . the city police . . ., cause the removal of a vehicle parked on such property to the nearest public garage if there is displayed, in plain view on the property a sign *prohibiting public parking* and containing the telephone number of the local traffic law enforcement agency." (Italics supplied.) Defendant Bagstad contends that in posting signs on his property limiting parking to "customers" or to "El Don parking" he fully complied with the provisions of the statute, and that in enjoining him from authorizing impoundments unless he added a time limit to the sign the trial court usurped the Legislature's role. We reject Bagstad's contention.

The trial court determined that Bagstad's sign did not comply with the statutory requirement that a person must clearly display "a sign prohibiting public parking" before authorizing an impoundment. (Veh. Code, § 22658, subd. (a).) We agree. Bagstad's signs do not clearly and unambiguously prohibit public parking—rather they purport to limit parking to "El Don parking" or "customers." From this language, those parking in the lot could reasonably conclude that so long as they patronized El Don Liquor they could utilize the lot as a public parking area while doing their errands. Bagstad's intent, apparently, was to prohibit parking on the premises except for El Don customers *only while they shopped in the El Don store.* As we see it, this might have been

accomplished in two ways: by posting a sign allowing parking only "while shopping at El Don Liquor," or by posting a sign allowing customer parking for a brief time limit. In enjoining Bagstad from authorizing impounds unless he posted time limit signs, the trial court was seeking to insure compliance with the Legislature's mandate rather than adding to it. Bagstad's contention is thus meritless.

## III

### VEHICLE CODE SECTION 22851

Vehicle Code section 22851 provides in pertinent part that "[w]henever a vehicle has been removed to a garage . . . and the keeper of the garage has received the notice or notices as provided herein, the keeper shall have a lien dependent upon possession for his compensation for towage and for caring for and keeping safe such vehicle . . . ." Defendant James contends that the phrase "has been removed to a garage" should be construed to mean the time when the towing company takes possession of the vehicle and assumes responsibility for its safekeeping. Thus, he argues, the lien provision of the statute takes effect as soon as the vehicle has been hoisted, so that the tower has the right to charge a fee as a condition of letting the vehicle down, and the trial court erred in enjoining him from doing so. Alternatively, James contends that even if the lien does not become operative the moment the vehicle is hoisted, it takes effect as soon as the vehicle is moved off the lot and begins its journey to the impound garage. James argues that such an interpretation is necessary to prevent vehicle owners from following and flagging down the tow truck just before it enters the garage, retaking possession of the vehicle and depriving the towing company of the expenses incurred in towing the vehicle. For the reasons set out below, we conclude that the trial court's interpretation of the statute is correct.

Vehicle Code section 22851 states succinctly that the keeper's lien attaches when the vehicle "has been removed to a garage . . . ." It is a well-established tenet of our law that a court is required to give effect to statutes according to the usual, ordinary import of their language, and to refrain from "interpreting" where the language of the statute is clear and unambiguous. (E.g., *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222; [110 Cal.Rptr. 144, 514 P.2d 1224]; *Cline* v. *Yamaga* (1979) 97 Cal.App.3d 239, 245 [158 Cal.Rptr. 598]; *People* v. *Clark* (1977) 72 Cal.App.3d 80, 82 [139 Cal.Rptr. 817].) In the instant case, "removed to a garage" clearly refers to placing a vehicle within a

storage facility; to construe it to mean "hoisted from the ground" or "removed from the private property where parked" would be to distort the plain meaning of the statute. Furthermore, if the trial court had construed the statute in issue to mean "removed from the private property where parked," and had not enjoined James from charging a fee unless the vehicle were physically within his garage, James would have been free to tow a vehicle a few feet from the premises, park on the street nearby, and charge the returning owner a towage fee. The Legislature's obvious intent in enacting Vehicle Code section 22851 was to grant a lien to one who has performed the labor of towing a vehicle to storage and borne the responsibility of keeping the vehicle safe until called for. To accept James' interpretation of the statute would encourage the very abuses in which he engaged, a result hardly in keeping with the legislative intent in conferring lien rights on towers.

Defendant James also contends that the portion of the preliminary injunction enjoining him from charging fees for services other than "towing" and "storage" is ambiguous. The words "towing" and "towage," as used in the injunction and the statute are not ambiguous; they refer to those activities reasonably necessary to transport and impound a vehicle. The injunction, however, prohibits charging of fees such as the "let-down" fee, the "standby" fee, fees for being allowed to get personal property from the impounded vehicle, or fees for the preparation of lien papers, since these activities are totally unrelated to towing and storage.

## IV

### THE PRELIMINARY INJUNCTION

Defendant James contends that the trial court incorrectly weighed the relative hardship which defendants would suffer if the injunction were granted compared to the hardship suffered by the People if the injunction were denied.

"The grant or refusal of a preliminary injunction is, generally speaking, within the discretion of the trial court and its order may be reversed on appeal only if abuse of discretion is shown." (*Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390]; *Lagunitas Water co.* v. *Marin County Water Co.* (1912) 163 Cal. 332, 336-337 [125 P. 351]; *U.S. Hertz, Inc.* v. *Niobrara Farms* (1974) 41 Cal.App.3d 68, 79 [116 Cal.Rptr. 44].) In exercising its discretion, the

trial court concerns itself with (1) whether defendant will suffer greater injury from granting of the preliminary relief than plaintiff from its denial and (2) whether there is reasonable probability that plaintiff will prevail on the merits. (*People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 21 [141 Cal.Rptr. 20, 569 P.2d 125]; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889]; *U.S. Hertz, Inc.* v. *Niobrara Farms, supra,* 41 Cal.App.3d 68, 79.) In the case at bench there has been no abuse of discretion.

James argues that Bagstad will lose business because his parking lot is clogged and that he (James) will suffer tremendous business losses through not being able to charge fees except for vehicles which he physically places within his impound garage. Conversely, he argues, had the injunction been denied the public would be burdened only with the necessity to "pay more attention to signs," or to park in a nearby municipal lot while going to the beach and shopping in the neighborhood of El Don Liquor.

We disagree with James' characterization of the relative hardships involved. Bagstad is not required to stop removals from his lot, but only to make sure his warning signs give proper notice and are in plain view of all who park in the lot. James is indeed prohibited from charging fees unless he has actually towed a vehicle to his garage, but he is not prohibited from charging fees reasonably related to towing and storage for vehicles he has garaged. His plaint that vehicle operators will follow his tow trucks and stop them before they reach the garage seems rather empty, since in the large majority of cases the removal of an operator's vehicle from a parking place deprives the operator of the means of giving immediate chase to the tow truck. Had the injunction been denied, however, many members of the public might be subjected to hoisting or towing without sufficient notice, to intimidation and physical threat, to misrepresentations concerning liens, and to various other indignities. The Huntington Beach Police's PPI records reveal that approximately 150 people per month had their vehicles hoisted or towed from El Don Liquor by Ace. We conclude that the trial court accurately assessed the relative hardships involved in granting this preliminary injunction.

James next advances the equitable defense of "unclean hands." (See 2 Witkin, Cal. Procedure (2d ed. 1970) § 69, p. 1509, and cases cited therein.) He argues that since those whose cars were hoisted or towed from the El Don lot were illegally parked, that they have unclean hands and are barred from equitable relief. The contention is without

merit. Most of those who were towed from El Don stated that they did not see the warning signs, or that they interpreted the signs to allow them to use the lot as public parking if they patronized El Don. More importantly, this is an action by the People to enjoin unlawful and fraudulent business practices; it is not an action by the individuals who were victimized by defendants. ■ Defendant Bagstad's contention that the persons who were hoisted or towed from El Don's parking lot had an adequate remedy at law, so that the People, standing in those person's shoes, have no right to injunctive relief is without merit for the same reason. The district attorney is acting pursuant to a legislative mandate to seek injunctive relief against unlawful, unfair or fraudulent business practices. (*People* v. *McKale, supra*, 25 Cal.3d 626, 632-633; §§ 17203-17204; see fn. 1, *ante*.) The availability of remedies at law for those who have had dealings with James and Bagstad is irrelevant to the instant action.

The order granting preliminary injunction is affirmed.

Gardner, P. J., and Morris, J., concurred.