**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CITY & COUNTY OF SAN FRANCISCO,
*Plaintiff-Appellant,*

v.

PG&E CORPORATION,
*Defendant-Appellee.*

No. 03-16976

D.C. No.
CV-02-03668-VRW

PEOPLE OF THE STATE OF
CALIFORNIA, ex rel. BILL LOCKYER,
Attorney General State of
California,
*Plaintiff-Appellant,*

v.

PG&E CORPORATION,
*Defendant-Appellee.*

No. 03-17051

D.C. Nos.
CV-02-04330-VRW
CV-02-03668-VRW
CV-02-04071-VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
February 18, 2005—San Francisco, California

Filed January 10, 2006

Before: Sidney R. Thomas, Richard A. Paez, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Thomas;
Partial Dissent by Judge Callahan

163

## COUNSEL

Bill Lockyer, Tom Greene, Ken Alex, Danette Valdez, and Anne Burr, San Francisco, California, for appellant Attorney General.

Dennis J. Herrera, Owen Clements, Theresa Mueller, David Campos, San Francisco, California, for appellant City & County of San Francisco.

Alan S. Gover, Mike Stenglein, Stavy Russell, Dewey Ballatine LLP, Houston, Texas, and Michael P. Kellser, Weil, Gotshal & Manges LLP, New York, New York, for the appellees.

## OPINION

THOMAS, Circuit Judge:

In this appeal, we consider whether a lawsuit filed by governmental entities seeking restitution to third parties pursuant to the California Unfair Practices Act constitutes a police and regulatory power action that cannot be removed to bankruptcy court. Under the circumstances presented here, we conclude that it does, and reverse the judgment of the district court.

I

The present controversy stems from the bankruptcy reorganization filed by Pacific Gas & Electric Company ("the Utility" or "the Debtor"). The Utility provides gas and electric services to more than four million customers in northern and central California, subject to the regulation of the California Public Utilities Commission ("CPUC") and the Federal Energy Regulatory Commission ("FERC"). In general, the CPUC has jurisdiction to set the rates, terms and conditions of service for the Utilty's electricity distribution, natural gas distribution and natural gas transportation and storage services in California. The CPUC is also responsible for setting service levels and certain operating practices and for reviewing the Utility's capital and operating costs. FERC has jurisdiction to set the rates, terms and conditions of service for the Utility's electricity transmission operations and wholesale electricity sales.

The Utility is a wholly owned subsidiary of PG&E Corporation ("the Corporation"), an energy-based holding company

incorporated in 1995 that conducts business principally through the Utility. With one exception, during the period relevant to this appeal, the members of the board of directors of the Utility and the Corporation were the same.

In April 2001, the Utility filed a voluntary petition for bankruptcy under the reorganization provisions of Chapter 11 of the Bankruptcy Code. In early 2002, the California Attorney General and the City and County of San Francisco ("San Francisco") filed separate law enforcement actions in San Francisco Superior Court against the Corporation, alleging that it illegally transferred billions of ratepayer generated dollars from the Utility to itself in violation of section 17200 of the California Business and Professions Code.[1] The Attorney General and San Francisco sought injunctive relief, civil penalties, and restitution as remedies for the parent Corporation's and its directors' unlawful actions. As summarized by the bankruptcy court, the Attorney General alleged that:

> Corporation has engaged in a series of events amounting to unlawful, unfair and fraudulent business acts or practices including (1) agreeing to the so-called First Priority Condition[2] while never intending to abide by it and other conditions; (2) subordinating the interests of Debtor and Debtor's ratepayers to Corporation's own interest; (3) failing to disclose to the California Public Utilities Commis-

---

[1]Cal. Bus. & Prof. Code §17200 states: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code."

[2]The Attorney General alleged that "in order to obtain CPUC's approval of Debtor's application to reorganize into a holding company structure . . . , Corporation and its directors agreed that they would give 'first priority' to the capital needs of the Debtor as determined to be necessary and prudent to meet its obligations to serve or operate Debtor in a prudent and efficient manner." *In re Pac. Gas & Elec. Co.*, 281 B.R. at 4 n.4.

sion (the "CPUC") its true intentions during the so-called Holding Company Proceedings;[3] (4) transferring ratepayer-funded assets from Debtor to Corporation for the benefit of Corporation and its affiliates, even while Debtor was experiencing financial distress, and without intent to infuse capital into Debtor when it needed capital to operate, in violation of the First Priority Condition and other conditions; (5) appropriating over $4 billion from revenues that Debtor had received from high frozen rates paid by ratepayers; (6) implementing "ring-fencing" transactions to protect the assets of other affiliates of Corporation from bankruptcy or credit down-grading, insuring that it would be impossible for Debtor to access such excess and impairing Corporation's ability to provide cash to Debtor, again in violation of the First Priority Condition.

*In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 4 (Bankr. N.D. Cal. 2002).

The Attorney General sought the following relief for the alleged conduct: (1) an injunction against the Corporation and its officers barring them from engaging in further violations of 17200; (2) the appointment of a receiver; (3) an order directing the Corporation and its officers to pay restitution; and (4) an order assessing civil penalties of not less than $500 million and the cost of suit. The Attorney General did not identify to whom restitution, if found necessary, should be paid. *Id.* The Corporation removed the Attorney General's action to bankruptcy court. The Attorney General moved to remand the action to state court.

---

[3]"On October 20, 1995, Debtor filed an application with the CPUC for approval to reorganize under a holding company structure. It proposed to implement the restructuring through a reverse triangular merger. As a result of merger, Debtor would become the wholly owned subsidiary of Corporation." *In re Pac. Gas & Elec. Co.*, 281 B.R. at 4 n.5.

In February 2002, San Francisco filed a complaint in the Superior Court of the State of California for the County of San Francisco alleging that from 1997 through 2000, the Utility and the Corporation unlawfully conspired to transfer $4.6 billion from the Utility to the Corporation. This lawsuit mirrored the Attorney General's action, alleging violations of Cal. Bus. & Prof. Code § 17200 et seq. The Corporation removed San Francisco's action to the bankruptcy court, and San Francisco moved to remand the action.

In June 2002, the bankruptcy court issued a decision in which it determined that: (1) the Eleventh Amendment did not bar removal of the Attorney General's and San Francisco's § 17200 actions, *In re Pac. Gas & Elec. Co.*, 281 B.R. at 6-7; and (2) the Attorney General's and San Francisco's § 17200 actions were exempt from removal under 28 U.S.C. § 1452(a) because they were "police or regulatory power" actions, *id.* at 10-13.

All parties appealed portions of the bankruptcy court's decision to the United States District Court for the Northern District of California. The Attorney General and San Francisco appealed the bankruptcy court's holding that the Eleventh Amendment did not bar removal of their § 17200 actions. The Corporation appealed the bankruptcy court's decision that 28 U.S.C. § 1452(a) bars removal of the § 17200 actions.

The district court affirmed in part and reversed in part the bankruptcy court. The district court affirmed the bankruptcy court's holding that the Eleventh Amendment did not bar removal of the § 17200 actions. The district court also concluded that: (1) the bankruptcy court correctly remanded the § 17200 actions as to civil penalties and injunctive relief because the "police or regulatory power" exception of 28 U.S.C. § 1452(a) barred removal; (2) the bankruptcy court erroneously remanded the restitution remedy sought in the § 17200 actions because it did not fall within 28 U.S.C.

§ 1452(a)'s "police or regulatory power" exception; and (3) the restitutionary claims are the property of the Utility's estate. Therefore, the district court stayed the restitution award claim and reversed the bankruptcy court's order remanding the restitution award claim.

The Attorney General and San Francisco timely appealed. On April 12, 2004, after these appeals were filed, the Utility emerged from bankruptcy. As part of its confirmed plan of reorganization, the Utility released any and all claims it had against the Corporation and its officers and directors.

## II

Before proceeding to the merits of this case, we must first dispose of a few predicate jurisdictional issues.

## A

**[1]** We have appellate jurisdiction to review the remand order. Generally, a district court's denial of a motion to remand a case to state court is not a final decision on the merits that we may review on direct appeal under 28 U.S.C. § 1291. *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1274-75 (9th Cir. 1990). However, the general rule does not apply if a district court's order denying a motion to remand effectively ends the litigation or "effectively sends a party out of court." *Ramirez v. Fox Television Station Inc.*, 998 F.2d 743, 746 (9th Cir. 1993) (quoting *United States v. Lee*, 786 F.2d 951, 956 (9th Cir. 1986)). Here, the district court's action effectively terminated the Attorney General's and San Francisco's restitution claim. Therefore, the district court's order was a final decision appealable under 28 U.S.C. § 1291, and we have appellate jurisdiction to review the order denying remand. *Ramirez*, 998 F.2d at 747.[4]

---

[4]Given this conclusion, it is unnecessary for us to decide whether or not we also have pendant appellate jurisdiction, as urged by the Attorney General and San Francisco.

B

**[2]** Our review of the district court's order is not precluded by 28 U.S.C. § 1452(b), which bars appellate review of a district court's order remanding a properly removed cause of action if the remand decision is based on equitable factors.[5] Section 1452(b) does not deprive appellate courts of jurisdiction to review whether the action was properly removed in the first instance. *See Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (9th Cir. 1997) ("The language of § 1452(b) expressly precludes appellate review of a district court's refusal to remand a properly removed action on equitable grounds. However, the plain language of § 1452(b) *presumes* that removal under § 1452(a) was proper.").

The central issue in this case is whether removal of the actions filed by the Attorney General and San Francisco was precluded because the claims were part of "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power," and not subject to removal under 28 U.S.C. section 1452(a). This is a question of subject matter jurisdiction that does not implicate the jurisdictional limitations of section 1452(b).

C

**[3]** Our appellate jurisdiction is also not precluded by the statutory bar, pursuant to 28 U.S.C. section 1447(d), of review

---

[5]Section 1452(b) provides as follows:

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

of district court decisions to remand for lack of subject matter jurisdiction.[6] There is no question, and neither party disputes, that § 1447(d) only applies to cases remanded pursuant to § 1447(c), where there is a defect in the removal procedure or "the district court lacks subject matter jurisdiction."

Rather, the Corporation urges that section 1447(d) should be construed as modifying the standards set forth in section 1452(b) to bar appeals of remand orders, and orders to not remand, which are founded on subject matter jurisdiction. For this proposition, the Corporation relies on *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). However, *Things Remembered* did not hold that section 1447(d) modified section 1452(b). Rather, the Court explained in *Things Remembered* that both statutes govern removals and remands in bankruptcy cases: there is nothing in section 1447(d) that should be read to imply that it does not apply to bankruptcy, and section 1452(b) should not be read to prevent section 1447(d) from applying to bankruptcy. *See id.* at 129.

Section 1447(d) does not "preclude appellate review of a district court decision not to remand when the district court

---

[6]28 U.S.C. § 1447 provides in relevant part:

(c)   A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

(d)   An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

erroneously finds subject matter jurisdiction." *Bissonnet Invs. LLC v. Quinlan (In re Bissonnet Invs. LLC)*, 320 F.3d 520, 525 (5th Cir. 2003). The policy reasons for precluding appellate review of an order to remand based on the lack of jurisdiction, whether correct or not, do not similarly apply to the opposite situation where a district court retains jurisdiction based on the belief, whether correct or not, that federal courts have exclusive jurisdiction over a claim or cause of action. The strong congressional policy against appellate review of remand orders is this:

> Except in the highly unlikely event that a district court is so unsure of itself that it stays its decision to remand, the entry of a remand order ends the proceeding in the federal court and the state (or other) court proceeding gets under way. If months or years later a federal Court of Appeals decides that the remand was improper, matters are thrown into confusion and the effort expended by the parties on the state court proceeding (along with a good deal of state judicial resources) is in jeopardy. And if the state case has proceeded to judgment, the subsequent re-removal is for naught as the parties are bound by *res judicata*.

*Sykes v. Texas Air Corp.*, 834 F.2d 488, 490 (5th Cir. 1987) (footnote omitted).

This policy is inapplicable to appellate review of district court decisions not to remand a claim or cause of action to state court. Indeed, the strong policy of maintaining the limited jurisdiction of federal courts militates towards allowing appellate review of a district court decision not to remand, particularly when considering the possibility that the district court made the decision based on the erroneous finding that it possessed subject matter jurisdiction, a finding that can be challenged at any stage of litigation. *Cf. Things Remembered*, 516 U.S. at 132 n.1 (Ginsburg, J., concurring) ("An interlocu-

tory decision 'to not remand,' therefore, although not *per se* reviewable, would leave open for eventual appellate consideration—also and earlier for district court reconsideration—any question of the court's subject-matter jurisdiction."); *Sykes*, 834 F.2d at 492 n.16 ("When the district court decides to *retain* a case in the face of arguments that it lacks jurisdiction, the decision itself is technically unreviewable; but of course the appellate court reviewing any other aspect of the case must remand for dismissal if the refusal to remand was wrong, *i.e.,* if there is no federal jurisdiction over the case."). Furthermore, the fact that section 1447(d) only applies to orders to remand, not orders denying a motion to remand, adds support to the argument that, read together, sections 1447(d) and 1452(b), do not bar appellate review of a decision to not remand where a lack of federal subject matter jurisdiction is alleged.

There is nothing in section 1447(d) that precludes appellate jurisdiction in this case.[7]

## D

**[4]** Both the bankruptcy court and the district court correctly concluded that the Eleventh Amendment did not preclude the exercise of federal court jurisdiction, as the Attorney General argues. The Attorney General contends that sovereign immunity barred the removal of his action to federal court. However, the Attorney General was the plaintiff in the origi-

---

[7]Given our resolution of this issue, it is not necessary to discuss the counter-argument raised by the Attorney General and San Francisco that the *Clorox/Pelleport* doctrine would provide appellate jurisdiction if section 1447(d) applied to preclude it. *See Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1118 (9th Cir. 2002) (noting that because "deciding a substantive legal question [was] necessary to determine whether subject matter jurisdiction existed, the *Clorox/Pelleport* doctrine does not apply."). *See generally Clorox Co. v. United States Dist. Ct.*, 779 F.2d 517, 520 (9th Cir. 1985) and *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276-77 (9th Cir. 1984).

nal section 17200 action brought in state court. Therefore, removal of that action was not prohibited by the Eleventh Amendment. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 848 (9th Cir. 2004) ("[W]e hold that a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to federal court of competent jurisdiction.").

### III

**[5]** The central question in this case is whether the section 17200 state lawsuits filed by the Attorney General and San Francisco constitute police or regulatory power actions that cannot be removed to bankruptcy court under 28 U.S.C. section 1452(a). That section provides:

> A party may remove any claim or cause of action in a civil action *other than* a proceeding before the United States Tax Court *or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power*, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a) (emphasis added).

### A

In bankruptcy cases, we have construed the phrase "police or regulatory power" in the context of the automatic stay exception contained in 11 U.S.C. section 362(b)(4).[8] The lan-

---

[8]Section 362(b)(4) excepts from the automatic stay actions and proceedings by a governmental unit "to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power."

guage of the police and regulatory power exceptions in the automatic stay context and in the removal context is virtually identical, and the purpose behind each exception is the same. *Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings*, Inc.), 273 B.R. 374, 385 (Bankr. E.D. Pa. 2002). "Section 1452 and 11 U.S.C. § 362(b)(4) were designed specifically to work in tandem. Therefore, interpretation of these two provisions should be consonant." *Id.* (citation omitted); *see also* 1 *Collier on Bankruptcy* (15th ed.) § 3.07[3] ("It would seem, therefore, that the congressional intent was to make those types of civil actions that are not subject to removal correspond to civil actions that are excepted from the automatic stay.").

In the automatic stay context, we generally have construed the phrase "police or regulatory power" to "refer to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." *Hillis Motors, Inc. v. Haw. Auto Dealer's Ass'n*, 997 F.2d 581, 591 (9th Cir. 1993).

[6] We have applied two alternative tests to determine whether the actions of a governmental unit are in exercise of its police and regulatory power as defined in 11 U.S.C. section 362(b)(4): the "pecuniary purpose" and the "public policy" test. *Universal Life Church v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997).[9] Satisfaction of either test will suffice to exempt the

---

[9]"These tests derive from a statement made by Representative Don Edwards, a member of the joint committee resolving differences between the House and Senate versions, who stated that the exception 'is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor, or property of the estate.' " *Fed. Trade Comm'n v. first Alliance Mortgage Co. (In re First Alliance Mortgage Co.)*, 264 B.R. 634, 646 (Bankr. C.D.Cal. 2001) (quoting 124 Cong. Rec. H11,089 *reprinted in* 1978 U.S.C.C.A.N. 6436, 6444-45).

action from the reach of the automatic stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005).

If the action primarily seeks to protect the government's pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety and welfare, the automatic stay does not apply. *Universal Life*, 128 F.3d at 1297; *see also Mirant*, 398 F.3d at 1109 ("If the suit seeks to protect the government's pecuniary interest, the § 362(b)(4) exception does not apply. On the other hand, if the suit seeks to protect public safety and welfare, the exception does apply.").

B

In applying the pecuniary purpose and public policy tests, the district court correctly analyzed the individual claims, not the section 17200 actions as a whole. *See NLRB v. Continental Hagen Corp.*, 932 F.2d, 828 834-35 (9th Cir. 1991) (considering award for backpay separately from cease and desist order, both sought for violation of 29 U.S.C. § 158); *In re Charter First Mortgage, Inc.*, 42 B.R. 380, 382 (Bankr. D. Or. 1984) ("[I]t is clear to this court that in applying the pecuniary purpose test, it must look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate.").

If we considered only the action as a whole, the government could circumvent the reach of the automatic stay by including in one action claims that clearly were subject to the automatic stay with exempt claims. The same principle applies to the police or regulatory power exception contained in section 362(b)(4). Thus, contrary to the assertions of the Attorney General, we must analyze the claims separately, as did the district court.

C

On appeal, no party disputes that the Attorney General's and San Francisco's claims for injunctive relief and civil pen-

alties fall within the police or regulatory exception to removal. The remaining question is whether the restitution claims satisfy the requirements to be exempt from removal. We conclude that they do.

1

**[7]** The lawsuits brought by the Attorney General and San Francisco clearly pass the "pecuniary interest" test. "The purpose of the 'pecuniary purpose' test is to prevent suits that would allow a governmental unit to obtain an advantage over creditors or potential creditors in the bankruptcy proceeding." *Mirant,* 398 F.3d at 1109. "Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of safety and welfare." *Universal Life*, 128 F.3d at 1297.[10]

The actions filed by the Attorney General and San Francisco were brought pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200. The restitution claims in the actions do not relate primarily to the protection of the government's pecuniary interest in the debtor's property. If restitution is warranted, California and San Francisco will receive no pecuniary advantage; according to the Corporation, the money may flow directly to the debtor, and not to the state, county, or city governments.

---

[10]In its opinion, the district court properly highlighted an anomaly in *Universal Life*. In another portion of the *Universal Life* opinion, the phrase "solely" is used rather than "primarily." However, as the district court correctly observed, the test identified in *Universal Life* is whether the government's action *primarily* relates to the protection of the government's pecuniary interest, and subsequent cases have adhered to that articulation. *See, e.g., Mirant,* 398 F.3d at 1109; *Berg v. Good Samaritan Hosp. (In re Berg)*, 230 F.3d 1165, 1167 (9th Cir. 2000). The incidental use of the word "solely" appears to be a transcription error in describing the holding of *Thomassen v. Div. of Med. Quality Assurance (In re Thomassen),* 15 B.R. 907, 909 (9th Cir. BAP 1981).

**[8]** Restitution will benefit the public welfare by penalizing past unlawful conduct and deterring future wrongdoing. There is no showing that the restitution claims primarily advance the governments' pecuniary interests. In these circumstances, the restitution claim fits comfortably within section 362(b)(4)'s "police or regulatory power."

2

**[9]** Given that the governmental entities have satisfied the pecuniary interest test, it is unnecessary for us to reach the question of whether the restitution claim also satisfies the "public policy" test. However, most of our cases have analyzed both tests, and there are sound analytical reasons for considering both tests in conjunction.[11]

"Under the 'public purpose' test, the court determines whether the government seeks to 'effectuate public policy' or to adjudicate 'private rights.' " *Mirant*, 398 F.3d at 1109 (quoting *Continental Hagen Corp.*, 932 F.2d at 833). If the primary purpose of the suit is to effectuate public policy, then the exception to the automatic stay applies. However, "[a] suit does not satisfy the 'public purpose' test if it is brought pri-

---

[11]Our controlling precedent, as we have discussed, quite plainly states satisfying either the "pecuniary interest" or "public policy" test will suffice. That being said, "[v]iewing the tests as disjunctive perhaps does not always make sense, however." *First Alliance*, 264 B.R. at 647 n.11. One can conceive of actions in which it would make more sense to analyze the tests as conjunctive in order to effect the Congressional purpose of "permit[ing] governmental units to pursue actions to protect the public health and safety," but still requiring governmental entities to submit to bankruptcy jurisdiction when pursuing actions "to protect a pecuniary interest in property of the debtor or property of the estate." *Id.* at 646. A conjunctive, rather than a disjunctive, analysis would be more consistent with the oft-quoted floor statement of Rep. Edwards. 124 Cong. Rec. H11,089 *reprinted in* 1978 U.S.C.C.A.N. 6436, 6444-45); *see note 6*. This case may provide an example of why application of the "pecuniary interest" test in isolation may not provide the most satisfactory analysis of whether the exemption applies.

marily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." *Id.*

As the California Supreme Court has explained, a civil action brought by a governmental entity under section 17200 "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *People v. Pacific Land Research Co.*, 141 Cal. Rptr. 20, 24 (Cal. 1977). The character of a section 17200 action is not affected by the choice of restitution as a remedy. As the Court further explained:

> The request for restitution on behalf of vendees in such an action is only ancillary to the primary remedies sought for the benefit of the public. (*People v. Super. Ct. (Jayhill)*, 9 Cal.3d 283, 286, 107 Cal.Rptr. 192, 507 P.2d 1400.) While restitution would benefit the vendees by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions.

*Id.*

**[10]** In this case, as in every case involving restitution, a successful result for the governmental entities may well result in money being paid to private parties, either indirectly, through the bankruptcy court, or through direct payments. However, the section 17200 restitution claims filed by the governmental entities in this case are fundamentally law enforcement actions designed to protect the public. As such, the restitution claims also satisfy the "public policy test."

## D

The Corporation contends that 11 U.S.C. section 541 trumps 28 U.S.C. section 1452(a), permitting removal of these actions because the choses in action are property of the estate. To the extent that the Utility had the right to bring a claim

against the Corporation pursuant to section 17200, the Corporation is correct. Section 541 defines the property of the bankruptcy estate, which is subject to the bankruptcy court's *in rem* jurisdiction. *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc.*, 700 F.2d 1279, 1282 (9th Cir. 1983). The Utility's chose in action would be property of the bankruptcy estate pursuant to section 541(a)(1). *Traders State Bank of Poplar v. Mann Farms, Inc. (In re Mann Farms, Inc.)*, 917 F.2d 1210, 1214 (9th Cir. 1990); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986).

However, the governmental entities are not asserting the Utility's claim in the lawsuit. They are pursuing a section 17200 remedy as a matter of state statutory right independent of any claim that the Utility could have pursued. Cal. Bus. & Prof. Code section 17204 provides:

> Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition.

Section 17204 confers standing to bring actions under section 17200 on those who have been injured as the result of

unfair competition and also on designated governmental entities for purposes of public protection. The most recent amendment to section 17204, which does not affect this case, was made by passage of Proposition 64 in 2004 by the California electorate. The initiative's finding and declaration of purpose provided that "[i]t is the intent of California voters in enacting this act that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public." Initiative Measure (Prop. 64) § 1(f). The initiative further declared that "[i]t is the intent of California voters in enacting this act that the Attorney General, district attorneys, county counsels, and city attorneys maintain their public protection authority and capability under the unfair competition laws." *Id.* at § 1(g). This statement of purpose is in accord with the long history of the Unfair Practices Act. *See, e.g., People v. Centr-O-Mart*, 214 P.2d 378, 380 (Cal. 1950) (holding that the Attorney General could pursue actions under the predecessor statute to enforce the State's interest in public welfare).

The government's right to pursue a cause of action under section 17200 is separate from, and not derivative of, the Utility's right to assert an action as a debtor-in-possession. The government's right of action under section 17200 is not part of the bankruptcy estate under section 541.[12]

---

[12]The California Supreme Court's recent decision in *State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 32 Cal. Rptr. 3d 498 (Cal. 2005) does not alter this conclusion. In *Altus*, the court considered whether the Attorney General had the authority to pursue a section 17200 action relating to an insolvent insurance company when the California Insurance Commissioner had been appointed to act as a conservator or liquidator. Construing California law, the court concluded that the Insurance Commissioner had the exclusive right to pursue such remedies under the California Insurance Code, which is not at issue in this case. The obligations, rights, and responsibilities of the California Insurance Commissioner and a federal bankruptcy debtor-in-possession differ. Further, in examining the specific action at hand, the court also concluded that the primary purpose of the Attorney General's suit was to benefit defined individuals and entities, the protection of which was already committed to the Insurance Commissioner, rather than to benefit the general public interest.

The fact that all or part of a restitution award might be returned to the Utility or the bankruptcy estate does not change the analysis. Assuming, *arguendo*, that a restitution award would constitute property of the bankruptcy estate, that does not mean that section 541would obviate the law enforcement exception to removal contained in 28 U.S.C. section 1452(a). Indeed, that is the point of the exception: to define claims or causes of action that are not subject to removal despite the actual or potential existence of a related federal bankruptcy case.

IV

Through various provisions of the Bankruptcy Code, Congress has evidenced its intent that a governmental unit's police or regulatory action not be litigated in federal bankruptcy court. Section 362(b)(4) of the Bankruptcy Code exempts such an action from the reach of the automatic stay; 28 U.S.C. section 1452(a) exempts such an action from removal to bankruptcy court. The critical determination is whether a particular government action qualifies as a "police or regulatory action" under the principles we have articulated, and that determination must be made on the basis of a case-specific inquiry.

**[11]** In analyzing the case at hand, we conclude that the section 17200 state lawsuits filed by the Attorney General and San Francisco constitute police or regulatory power actions that cannot be removed to bankruptcy court under 28 U.S.C. section 1452(a). Although we agree with much of the district court's thoughtful opinion, we reverse the judgment, with the direction to remand the entire action to state court.

**REVERSED and REMANDED.**

CALLAHAN, Circuit Judge, dissenting in part:

I join the holding on appellate jurisdiction in Part II of the opinion, but I cannot join my colleagues determination that appellants' restitution claims do not have a pecuniary purpose and satisfy the "public policy" test.

We start at the same place but our reasoning diverges. The starting point, set forth by the majority in footnote nine, is former Representative Don Edwards' statement that the exception is to be given a narrow construction and is " 'not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor, or property of the estate.' " *In re First Alliance Mortgage Co.*, 264 B.R. 634, 646 (C.D. Cal. 2001) (quoting 124 Cong. Rec. H11,089 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6436, 6444-45) (Slip at 177 n.9).

The majority appears to overlook this advice in concluding that the restitution claims pass the "pecuniary purpose" test. It restates the standard as " 'to prevent suits that would allow a governmental unit to obtain an advantage over creditors or potential creditors in the bankruptcy proceeding.' " (Slip at 179, quoting *Lockyer v. Mirant,* 398 F.3d 1098, 1109 (9th Cir. 2005)). The majority then reasons that because appellants "will receive no pecuniary advantage" if successful, the purposes of the restitution claims are not primarily pecuniary. (Slip at 179). The majority further concludes that because restitution "will benefit the public welfare by penalizing past unlawful conduct and deterring future wrongdoing," the claims do not "primarily advance the government's pecuniary interests." (Slip at 180).

This logic is less than persuasive. First, the public's interest in "penalizing past unlawful conduct and deterring future wrongdoing" is directly addressed by appellants' claims for injunctive relief and civil penalties, which we all agree fall within the police or regulatory power exception. Second, if, as Representative Edwards stated, the exception is "not to

apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor, or property of the estate," it makes no difference whether the restitution claims benefit appellants or the debtor because their primary purpose remains pecuniary gain. In addition, it should be noted that precisely who or what entity would receive the restitution award is unclear.[1]

The majority seeks to bolster its conclusion that the restitution claims pass the "pecuniary purpose" test by opining that the claims also satisfy the "public policy" test. (Slip at 180-81). The shifts in the majority's analysis, however, expose the flaws in its determination. The majority initially states that the district court "correctly analyzed the individual claims, not the § 17200 actions as a whole." (Slip at 178). When addressing the "public policy" test, however, the majority instead relies on the California Supreme Court's statement that "a civil action brought by a governmental entity under § 17200 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' *People v. Pac. Land Research Co.*, 141 Cal. Rptr. 20, 24 (Cal. 1977)." (Slip at 181). The majority then asserts that the "character of a § 17200 [proceeding] is not affected by the choice of restitution as a remedy." (Slip at 181). These shifts from evaluating individual claims, to looking at the action as a whole, and from analyzing the individual causes of action, to accepting broad remedies, is not only confusing, but results in a definition of the "public policy" test that eviscerates the "pecuniary purpose" test. It makes little sense to analyze the individual claims in a § 17200 action to determine whether they meet the "pecuniary purpose" test if the court is going to conclude that an *entire* § 17200 action automatically meets the "public purpose" test when one or more of the claims asserted in the action concern matters of safety or welfare.

---

[1]The parties disagree as to who should receive any restitution award. The majority recognizes that "all or part of a restitution award might be returned to the Utility or the bankruptcy estate," but does not determine the question. (Slip at 184).

In determining whether the restitution claims meet the "public policy" test, I would be consistent with our approach to the "pecuniary purpose" test, and look at the individual claims, rather than the broad purpose of the § 17200 action. Here, applying the "public policy" test as set forth by the majority, the restitution claims do not seek to "effectuate public policy" or to adjudicate "private rights." *Mirant*, 398 F.3d at 1109. As previously noted, the § 17200 action's "public policy" concerns are addressed in its claims for injunctive relief and civil penalties, rather than in the restitution claims. Also, the majority's comment that if restitution is warranted "California and San Francisco will receive no pecuniary advantage" (Slip at 179) certainly implies that the restitution claims assert "private rights."

I would remain faithful to the clear standard set forth by former Representative Edwards. If the government claim is "to protect a pecuniary interest in property of the debtor, or property of the estate," it does not pass the pecuniary interest test.[2] Here, although the § 17200 action's claims for injunctive relief and civil penalties seek to protect the public safety and welfare, its restitution claims have the primary purpose of protecting a pecuniary interest. Moreover, appellants' restitution claims when analyzed on their own do not meet the public policy test. Accordingly, I would find that the district court properly retained jurisdiction over the restitution claims, and affirm the district court's judgment in its entirety.

---

[2]This approach is consistent with our recent opinion in *Mirant*, 398 F.3d at 1109. There we held:

> The Attorney General's section 16 Clayton Act suit clearly satisfies the "pecuniary purpose" test. After having been trimmed down by the district court, the suit now seeks only divestiture. The Attorney General does not seek a monetary recovery, and asserts no interest of the state in the three power plants that are the subject of his suit. Rather, the Attorney General seeks only an injunction that would require Mirant to divest itself of the plants.