The People of the State of CALIFOR-
NIA, ex rel., Edmund G. BROWN Jr.,
Attorney General of the State of Cali-
fornia, Appellant,

v.

Alfred J.R. VILLALOBOS and ARVCO
Capital Research, LLC, a Nevada limit-
ed liability company, Appellees.

Nos. BK–10–52249, 10–52249, 10–
52251, 10–52252, 3:10–CV–
00598–ECR–RAM.

United States District Court,
D. Nevada.

July 1, 2011.

Michael L. Wachtell, Los Angeles, CA, Stephen R. Harris, Belding, Harris & Petroni, Ltd., Reno, NV, for Debtor.

### Amended Order

EDWARD C. REED, District Judge.

The Order (# 22) of the Court, filed on June 24, 2011, is amended to read as follows.

This case is an appeal from an order of the bankruptcy court, docketed on September 13, 2010, denying Appellant's motion to exempt the People of the State of California's enforcement action filed in California state court from the automatic stay through the police power exception contained in 11 U.S.C. § 362(b)(4). The question presented by the appeal is whether the bankruptcy court erred in finding that the People of the State of California's enforcement action is not an exercise of a governmental unit's police and regulatory power, and therefore not exempt from the automatic stay. For the reasons stated below, the bankruptcy court's order will be reversed.

### I. Background

On May 5, 2010, Appellant filed a civil law enforcement action ("Enforcement Action") in Los Angeles County Superior Court against Alfred Villalobos ("Villalobos"), ARVCO Capital Research ("ARVCO"), and Federico Buenrostro, alleging a fraudulent scheme to obtain placement agent commissions by corrupting the investment decision-making process of California Public Employees' Retirement System ("CalPERS"). (Appellant's Opening Br. at 2(# 15).) The Enforcement Action alleges three causes of action: securities fraud in violation of California Corporations Code §§ 25216(a), 25403 (the "securities fraud claim"); sales of securities without a broker-dealer certificate in violation of California Corporations Code §§ 25210, 25403 (the "claim for unlicensed activities"); and unfair competition in violation of California Business and Professions Code § 17200 *et seq.* (the "claim for unfair competition"). (*Id.*)

The various claims filed in the Enforcement Action are based on allegations that Villalobos and ARVCO (collectively "Appellees") "provided various undisclosed gifts and gratuities to the decision-makers of CalPERS ... to influence them into making investments in various private equity funds ... in order to obtain more than $47 million in placement agent commissions." (*Id.*) The Enforcement Action further alleged that Appellees made false representations to their clients to obtain payment of their commissions. (*Id.*) The claim for unlicensed activities is based on allegations that Appellees were unlicensed broker-dealers at the time of such activities. (*Id.* at 3.)

On the date the Enforcement Action was filed, Judge Gerald Rosenberg of the Los Angeles County Superior Court, upon motion by Appellant, appointed a receiver to take possession, custody, and control over the assets of Appellees. (*Id.*) On May 28, 2010, after conducting a hearing, Judge John H. Reid of the Los Angeles County Superior Court confirmed the appointment of a receiver. (*Id.*) at 4.

On June 9, 2010, Villalobos filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court of the District of Nevada for himself and the three entities controlled by him, ARVCO Capital Research, LLC, ARVCO Financial Ventures, LLC, and ARVCO ART, Inc. (*Id.*) On June 29, 2010, Appellant filed a motion to exempt its Enforcement Action from the automatic stay based on the police power exemption provision (the "Police Power Exemption Motion"). (*Id.*) at 5. On August 31, 2010, the bankruptcy court held a hearing on the Police Power Exemption Motion. (*Id.* at 8.) On September 13, 2010, the bankruptcy court issued an order denying the Police Power Exemption Motion. (*Id.* at 10.)

On September 24, 2010, Appellant filed a notice of appeal (# 1) with the Clerk of the bankruptcy court. (Notice of Appeal at 1(# 1).) The appeal was referred to this Court upon Appellant's election for hearing before the United States District Court. (*Id.*) On November 12, 2010, Appellant filed its opening brief (# 15). On December 2, 2010, Appellees filed their answering brief (# 18). On December 14, 2010, Appellant filed its reply brief (# 21).

## II. Jurisdiction

United States District Courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), as well as certain interlocutory orders described in 28 U.S.C. § 158(a)(2). A party may also, "with leave of the court," appeal from other interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3). *See In re City of Desert Hot Springs,* 339 F.3d 782, 787 (9th Cir.2003) (noting that the district court must hear appeals from final decisions of the bankruptcy courts, but it is within the discretion of the district court to hear appeals of interlocutory orders).

Here, the bankruptcy court's order with respect to Appellant's motion constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1) because it represents the bankruptcy court's final resolution of the parties' rights with regard to Appellant's claim. *See id.* at 788 (describing the Ninth Circuit's " 'pragmatic' approach to deciding whether orders in bankruptcy cases are final, 'recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.' ") (quoting *In re Mason,* 709 F.2d 1313, 1317 (9th Cir.1983)). As such, we have jurisdiction over the appeal pursuant to section 158(a).

## III. Standard of Review

We review the bankruptcy court's interpretation of 11 U.S.C. § 364(b)(4) and the applicability of the police power exemption *de novo.* *In re First Alliance Mortgage Co.,* 263 B.R. 99, 106 (9th Cir. BAP 2001).

## IV. Discussion

Appellant asserts that the bankruptcy court erred in examining the merits of the Enforcement Action, and that the bankruptcy court misapplied the law pertaining to the pecuniary purpose and public policy tests by holding that a permanent injunction or a legitimate claim for injunctive relief is required before the action may be exempted.

### A. The Police Power Exemption

The issue to be resolved is whether the claims brought in the Enforcement Action constitute police and regulatory power actions that are exempt from the automatic stay normally applicable once a debtor

files for bankruptcy. *See* 11 U.S.C. § 362(b)(4). That section provides that a governmental unit's action or proceeding "to enforce the governmental unit's police and regulatory power, including the enforcement of a judgment other than a money judgment" is exempt from the automatic stay. *Id.*

■ The Ninth Circuit applies two alternative tests to determine whether an action is in exercise of a governmental unit's police and regulatory power. *City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1123–24 (9th Cir.2006) ("*PG & E*"). The tests are the "pecuniary purpose" test and the "public policy" test. *Id.* at 1124. "Satisfaction of either test will suffice to exempt the action from the reach of the automatic stay." *Id.* Under the pecuniary purpose test, "the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of safety and welfare." *Id.* at 1124–25. Under the public policy test, "the court determines whether the government seeks to 'effectuate public policy' or to adjudicate 'private rights.'" *Id.* at 1125.

The bankruptcy court determined that the Enforcement Action fails to satisfy either of the two applicable tests, and therefore, the Enforcement Action is subject to the automatic stay.

## B. The Bankruptcy Court's Ruling on the Police Power Exemption Motion

### 1. *The Merits of the Enforcement Action Should Not Be Considered.*

■ The bankruptcy court correctly stated that "courts perform a case-by-case,

fact-specific analysis as to the claims in each particular action to determine whether or not they are excepted from the broad reach of the automatic stay." (Appellant's Appendix (AA), Bankr.Ct. Order at 20 (# 15–25).) The fact-specific analysis, however, should not extend to a determination of the merits and legitimacy of an action.

■ In *Board of Governors of Federal Reserve System v. MCorp Financial*, the Supreme Court of the United States considered the argument that a court must determine whether the proposed exercise of police or regulatory power is legitimate when applying 11 U.S.C. § 362(b)(4). 502 U.S. 32, 40, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). The Supreme Court observed that such an argument conflicts with the "limited authority Congress has vested in bankruptcy courts." The bankruptcy court in this case distinguished *MCorp* because the action therein was governed by the Financial Institutions Supervisory Act ("FISA"), which expressly precluded review. *Id.* at 44, 112 S.Ct. 459. While the bankruptcy court is correct that the holding in *MCorp* is not expressly applicable to this case, the Supreme Court's observation that bankruptcy courts should not determine the legitimacy of a governmental unit's police power action when applying 11 U.S.C. § 362(b)(4) has been adopted by the Ninth Circuit in cases without express congressional preclusion of review as in *MCorp*.[1]

■ In *PG & E*, the Ninth Circuit stated that "[t]hrough various provisions of the Bankruptcy Code, Congress has evidenced its intent that a governmental unit's police or regulatory action not be litigated in federal bankruptcy court." 433 F.3d at 1127. The Ninth Circuit acknowledges, as

---

1. Furthermore, Appellees acknowledge that "*MCorp* stands for the simple proposition— not disputed by the Debtors—that courts

should not examine the legitimacy of a proposed exercise of a governmental unit's police or regulatory power."

the bankruptcy court in this case has, that the determination of whether a particular governmental action qualifies as a police or regulatory action "must be made on the basis of a case-specific inquiry." *Id.* That inquiry, however, does not extend to determining whether the action is meritorious in the manner that the bankruptcy court herein has done. In our view, and according to Ninth Circuit precedent, the inquiry turns upon the two tests, pecuniary purpose and public policy, which we examine in a later section. Those tests, however, do not require that the bankruptcy court delve into witness depositions and evidence as to the legitimacy of the government's case. They merely require examination of the allegations of the government's case, to determine whether the action has more of a private or pecuniary nature, or a public one.

■ We do not believe that the bankruptcy court should, essentially, adjudicate the merits of a state court action that is pending in a different court, and determine whether the government is entitled to relief and thereby grant or deny exemption from the automatic stay. The proper forum for determining the merits of the case is the court in which that action is brought. The bankruptcy court is not authorized, as the Supreme Court noted in *MCorp,* to make such determinations. See *MCorp,* 502 U.S. at 40, 112 S.Ct. 459; *see also PG & E,* 433 F.3d at 1127. If the action, through an objective but case-specific inquiry, is determined to be exempt from the automatic stay, the state court will doubtless examine the legitimacy of the government's case through standard procedures such as motions to dismiss and motions for summary judgment.

■ In this case, the bankruptcy court noted that "the AG fails the public purpose test because it is seeking monetary relief for CalPERS, not for creditors of the es-

tates." (AA, Bankr.Ct. Order at 21 (# 15–25).) While we disagree with the conclusion regarding the public purpose test, we find that the bankruptcy court made the proper inquiry to determine whether the Enforcement Action should be exempt from the automatic stay when it examined the specific allegations and facts of the Enforcement Action. However, the bankruptcy court erred in observing that "the sworn deposition testimony of CalPERS' own witnesses exposes the misrepresentations contained in the AG's allegations. As such, no proper purpose of any kind can be served by allowing the AG to pursue those claims in state court." (*Id.* at 22.) This type of inquiry into the merits and legitimacy of the Enforcement Action is not proper, and should not have been part of the bankruptcy court's decision in disallowing the automatic stay exemption. Such inquiries are littered in the bankruptcy court's decision. For example, the bankruptcy court stated that "[i]t is also clear from the CalPERS witnesses' testimony that nothing Mr. Villalobos is alleged to have done affected CalPERS' investment decisions or caused them damages of any kind . . . ." (*Id.* at 23.) These observations led to the bankruptcy court's conclusion that "the AG's assertion that Mr. Villalobos committed any violation of section 25216(a) of the California Corporations Code or section 17200 of the Business and Professions Code has no merit." (*Id.*)

We do not believe that the bankruptcy court's inquiry into the merits of the Enforcement Action should have been a deciding factor in its decision to deny exemption from the automatic stay. This error alone would, in our view, require that we reverse the bankruptcy court's decision. However, we must also address the additional errors that Appellant argues were made by the bankruptcy court in deciding the Police Power Exemption Motion.

*2. Urgent Need to Prevent Imminent Harm is Not Required for the Police Power Exemption.*

 We disagree with the bankruptcy court's determination that the police power exemption only applies to actions which are urgently needed to protect public safety and health. The bankruptcy court based its ruling on *In re Four Winds Enterprises, Inc.*, in which the bankruptcy court of the Southern District of California stated that "[c]ourt decisions construing the exemption have narrowed it to those exercises of police power which are urgently needed to protect the public health and welfare." 87 B.R. 624, 629 (Bankr. S.D.Cal.1988) (citing *In re IDH Realty, Inc.*, 16 B.R. 55, 57 (Bankr.E.D.N.Y.1981)). The Ninth Circuit, however, has never held that an urgent need, or the prevention of ongoing or future harm, is required for an exemption from the automatic stay. In fact, the Ninth Circuit has affirmed exemptions in cases where there have only been past violations. *See, e.g., In re Berg*, 230 F.3d 1165, (9th Cir.2000) (affirming the exemption of sanctions for frivolous conduct from the automatic stay).

The United States Court of Appeals for the Fifth Circuit confronted the argument that the police power exemption is "limited to those situations where 'imminent and identifiable harm' to the public health and safety or 'urgent public necessity' is shown." *Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1184 (5th Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987). The Fifth Circuit held that 11 U.S.C. § 362(b)(4) "does not limit the exercise of police or regulatory powers to instances where there can be shown imminent and identifiable harm or urgent public necessity." *Id.* In *Oil Refining*, appellants argued, as Appellees do in our case, that legislative history indicating that § 362(b)(4) is "intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." *Id.* at n. 7 (citing 124 Cong. Rec. H11089). The Fifth Circuit stated that the floor statement that § 362(b)(4) should be construed narrowly applies, by its language, only to actions which are "aimed at protecting the government's monetary interest." *Id.* at n. 7. The Eighth Circuit agrees with the Fifth Circuit's conclusion that imminent and identifiable harm or urgent public necessity is not required for the police power exemption, and nothing in the statute or the legislative history is to the contrary. *In re Commonwealth Companies, Inc.*, 913 F.2d 518, 522 (8th Cir. 1990).

All of the cases relied upon by the bankruptcy court are lower court decisions that have been "roundly criticized." *Matter of Scott Housing Sys., Inc.*, 91 B.R. 190, 193 n. 2 (Bankr.S.D.Ga.1988). While there is no Ninth Circuit case directly on point, we are satisfied that the Eighth Circuit and Fifth Circuit holdings are more persuasive than the cases the bankruptcy court cited in its decision. Therefore, we conclude that the bankruptcy court erred in determining that the police power exemption should only be granted for actions that are urgently needed to protect public health and welfare.

*3. Injunctive Relief is Not Required for the Police Power Exemption.*

 Nor do we find that ongoing or future harm is required for exemption from the automatic stay. Punishment for past conduct is part of a governmental unit's police power. *See, e.g., Penn Terra Ltd. v. Dep't of Envtl. Res., Commonwealth of Pennsylvania*, 733 F.2d 267, 274

**412**

n. 7 (3d Cir.1984). Punishment in the form of civil penalties, disgorgement, and restitution serves a public, rather than a pecuniary, purpose. *See, e.g., PG & E,* 433 F.3d at 1125. We are unable to find binding decisions that discuss the necessity of ongoing or future harm, and therefore, hold that the bankruptcy court erred in giving considerable weight to the apparent lack of future harm. For instance, the bankruptcy court noted that "because ARVCO Capital has not operated since 2008 … [p]ermitting these claims to go forward in the state court would not prevent ongoing or future violations of law, nor would it protect any public safety or health purpose or effectuate public policy." (AA, Bankruptcy Ct. Order at 21 (# 15–25).) This blanket statement seems to imply that there is no public benefit in punishment and deterrence of fraudulent behavior that harms the public. Surely, punishment of fraudulent and criminal behavior serves the purpose of providing at least some deterrence of future fraudulent and criminal behavior. *See, e.g., In re Charter First Mortgage., Inc.,* 42 B.R. 380, 384 (Bankr.Or.1984) ("The authority to protect the public welfare would be largely meaningless without the power to punish and prevent."). The circumstance that the defendants in the Enforcement Action have apparently ceased fraudulent behavior does not lead to the conclusion that a governmental unit's action against the defendants' past behavior is moot or irrelevant to public welfare.

■ Furthermore, we note that the Enforcement Action does seek injunctive relief against the defendants to prevent the defendants from engaging in any conduct violating the laws relating to unlicensed activities and unfair competition and securities fraud. While the bankruptcy court seems to have concluded that such relief is moot because Appellees have al-ready ceased any objectionable activities, we do not think that the court should have considered evidence regarding the merits and necessity of injunctive relief. Whether Appellees' current activities are sufficient to rule out the necessity for a permanent injunction should be determined in the Enforcement Action. *See, e.g., Charter,* 42 B.R. at 384. Even if the need for injunctive relief is indeed moot, the absence of injunctive relief does not take the Enforcement Action outside of the police power exemption. *In re Commonwealth Companies, Inc.,* 913 F.2d 518, 522 (8th Cir.1990).

*4. Civil Penalties, Disgorgement, and Restitution Remedies Do Not Convert a Governmental Unit's Police Power Action into a Pecuniary Action.*

■ In addition, the bankruptcy court stated that the Enforcement Action fails the pecuniary purpose test because the Attorney General seeks disgorgement, civil penalties, and restitution. (AA, Bankr.Ct. Order at 23 (# 15–25).) We disagree. In *In re Berg,* the Ninth Circuit rejected the argument that an award of sanctions for frivolous conduct inures to the benefit of a private party and therefore fails the pecuniary purpose test for being "overly-literal." 230 F.3d 1165, 1168 (9th Cir.2000). The Ninth Circuit stated that several cases have rejected this argument; for example, the Ninth Circuit cites a bankruptcy court decision "not[ing] that although private parties may benefit financially from sanctions, the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests." *Id.* (citing *O'Brien v. Fischel,* 74 B.R. 546, 551 (D.Hawai'i 1987)). In *O'Brien,* the bankruptcy court noted that "a proceeding resulting in a monetary penalty may be excepted from the automatic stay as much as one resulting in a prison sentence or

injunctive relief" because of the deterrent effect of such penalties. 74 B.R. at 551.

Disgorgement, civil penalties, and restitution all satisfy a public purpose and the seeking thereof does not convert the action into one that fails the pecuniary purpose test. The Ninth Circuit observed that "[d]isgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *Sec. Exch. Comm'n v. First Pacific Bancorp,* 142 F.3d 1186, 1191 (9th Cir.1998). While disgorgement may inure to the benefit of CalPERS, the Ninth Circuit concluded that the primary purpose of disgorgement is to deprive the wrongdoer of ill-gotten gains, and to "deter others from violating securities laws by making violations unprofitable." *Id.*

■ Civil penalties, like disgorgement, also serve a public, rather than a pecuniary, purpose. The California Supreme Court noted that civil penalties are "a means of securing obedience to statutes validly enacted under the police power." *Hale v. Morgan,* 22 Cal.3d 388, 149 Cal. Rptr. 375, 381, 584 P.2d 512 (1978). The bankruptcy court in this case noted that the "AG primarily seeks pecuniary relief" and further elaborated that "[f]or example, the AG's prayer for civil penalties seeks 'not less that [sic] $25 million.'" (AA, Bankr.Ct. Order at 23 (# 15–25).) The amount of the civil penalties sought does not convert the purpose of civil penalties from punishment, deterrence, protection of the public into a private and pecuniary one.

■ As for restitution, *PG & E* controls. The Ninth Circuit stated that:

[r]estitution will benefit the public welfare by penalizing past unlawful conduct and deterring future wrongdoing. There is no showing that the restitution

claims primarily advance the governments' pecuniary interests. In these circumstances, the restitution claim fits comfortably within section 362(b)(4)'s "police or regulatory power."

*PG & E,* 433 F.3d at 1125.

In sum, the bankruptcy court's conclusion that the Enforcement Action fails the pecuniary purpose test because it seeks disgorgement, civil penalties, and restitution was incorrect.

**C. The Enforcement Action Satisfies Both the Pecuniary Purpose Test and the Public Policy Test, and Therefore, is Exempt From the Automatic Stay**

■ Each of the three claims in the Enforcement Action satisfies the pecuniary purpose test and the public policy test, and therefore the entire Enforcement Action is exempt from the automatic stay. As noted above, the Ninth Circuit applies two tests, the pecuniary purpose test and the public policy test, to determine whether a governmental action fits within the police power exemption. *PG & E,* 433 F.3d at 1123–24. Satisfaction of either test will suffice to exempt the action from the automatic stay. *Id.* at 1124.

■ Under Ninth Circuit law, "[i]f the action primarily seeks to protect the government's pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety and welfare, the automatic stay does not apply." *Id.* (citing *In re Universal Life Church, Inc.,* 128 F.3d 1294, 1297 (9th Cir.1997)). An example of a suit that would fail to satisfy the pecuniary purpose test (and also the public policy test) would be one in which the government sues a party to a governmental contract for contractual damages. *See, e.g., In re Coporacion de Servicios Medicos Hospitalarios de Fajardo,* 805 F.2d 440, 445 (1st Cir.1986). This

case is different. The government is not acting as a creditor for the primary purpose of protecting its pecuniary interests.

■ The purpose of the pecuniary purpose test is to prevent suits that would "allow a governmental unit to obtain an advantage over creditors or potential creditors in the bankruptcy proceeding." *PG & E*, 433 F.3d at 1124. It is undisputed that Appellant may not bypass the automatic stay to enforce a monetary judgment, but § 362(b)(4) does not bar Appellant from seeking the entry of a monetary judgment. The United States Court of Appeals for the Eighth Circuit stated that when the government is seeking only the entry of a money judgment against debtors, "[t]he entry of judgment would simply fix the amount of the government's unsecured claim against the debtors. It would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate." *In re Commonwealth Companies, Inc.*, 913 F.2d 518, 524 (8th Cir.1990).

We examine each claim separately to determine whether it satisfies the pecuniary purpose test, as required by *PG & E*. See *PG & E*, 433 F.3d at 1124. In *PG & E*, the Ninth Circuit was referring to claims for relief, as opposed to actions under section 17200. *Id.* However, we previously discussed whether the specific claims for civil penalties, restitution, and disgorgement satisfy the pecuniary purpose test, and will not repeat that analysis here.

### 1. The Securities Fraud Claim Satisfies the Pecuniary Purpose Test.

Plaintiff's claim for securities fraud, brought under California Corporations Code section 25216(a) and section 25403, satisfies the pecuniary purpose test because the claim does not "relate[ ] primari-

ly to the protection of the government's pecuniary interest in the debtor's property." *PG & E*, 433 F.3d at 1124–25. Instead, the action relates to "matters of safety and welfare." *Id.* at 1125. The Ninth Circuit stated that "[w]hen the Commission sues to enforce the securities laws, it vindicates public rights and furthers the public interest." *Sec. Exch. Comm'n v. Rind*, 991 F.2d 1486, 1491 (9th Cir.1993). The fact that the government sought disgorgement did not change the public purpose of the securities fraud claim. *Id.* In *Rind*, the Ninth Circuit observed that the purpose of disgorgement in securities fraud cases is to "deprive the wrongdoer of his or her unlawful profits and thereby eliminate the incentive for violating the securities laws. The theory behind the remedy is deterrence and not compensation." *Id.* Appellant is not acting to protect its own pecuniary interest in the debtor's property, and therefore the securities fraud claim should be exempt from the automatic stay as a police power action.

### 2. The Claim for Unlicensed Activities Satisfies the Pecuniary Purpose Test.

The claim for unlicensed activities, brought under California Corporations Code section 25210 and 25403, also satisfies the pecuniary purpose test, and should be exempt from the automatic stay. In *In re Poule*, the Bankruptcy Appellate Panel of the Ninth Circuit confronted a debtor charged with violations of the Contractor's Licensing Law, and found that the Contractor's Licensing Law "is a legitimate exercise of California's police power and the acts involved in this case are of a type the state has a legitimate interest in punishing and preventing." 91 B.R. 83, 87 (9th Cir. BAP 1988). The Bankruptcy Appellate Panel concluded that civil penalties

in that action fell within the police power exemption of section 362(b)(4). *Id.*

We conclude that the claim for unlicensed activities in this case likewise relates primarily to matters of public safety and welfare, rather than relating primarily to protection of Appellant's pecuniary interest in the debtors' property, and should be exempt from the automatic stay.

### 3. The Claim for Unfair Competition Satisfies the Pecuniary Purpose Test.

The claim for unfair competition, brought under California Business and Professions Code section 17200, satisfies the pecuniary purpose test. In *PG & E*, the Ninth Circuit examined an action brought pursuant to California's Unfair Competition Law. 433 F.3d at 1125. The Ninth Circuit found that the restitution claims in that action "will benefit the public welfare by penalizing past unlawful conduct and deterring future wrongdoing." *Id.* The Ninth Circuit noted that since the action satisfies the pecuniary interest or pecuniary purpose test, it is unnecessary to reach the question of the public policy test. *Id.* However, the Ninth Circuit did consider that test in conjunction with the pecuniary purpose test, and found that "a civil action brought by a governmental entity under section 17200 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" *Id.* at 1125–26 (quoting *People v. Pacific Land Research Co.*, 20 Cal.3d 10, 141 Cal.Rptr. 20, 569 P.2d 125, 129 (1977)). There is no showing that the unfair competition claim in our case is distinguishable from that in *PG & E*. The restitution, disgorgement, and civil penalties requested in the Enforcement Action will not inure to the benefit of the government. We discussed in detail the law concerning whether such monetary penalties serve a private, rather than a public, purpose, and note again that the fact that such penalties may result in money being paid to private parties does not change the fact that "the section 17200 restitution claims filed by the governmental entities in this case are fundamentally law enforcement actions designed to protect the public" and therefore satisfy the public policy test. *Id.* at 1126.

### 4. The Enforcement Action Also Satisfies the Public Purpose Test.

Because we conclude that each of the claims in the Enforcement Action satisfies the pecuniary purpose test, we will examine the public purpose test more briefly. We did not previously discuss the bankruptcy court's conclusion that "those individuals whose pensions are maintained by CalPERS *are* a 'select group of individuals,' not the public." (AA, Bankr.Ct. Order at 15 (# 15–25).) The bankruptcy court further noted that "[t]he mere fact that CalPERS is a large organization does not transform CalPERS from a private party to society at large." (*Id.*) We disagree with the bankruptcy court's conclusion that the AG is basically litigating on CalPERS' behalf, rather than on behalf of the public. Laws governing securities fraud, unlicensed activities, and unfair competition are directed at addressing public harms. The fact that a specific violation of those laws directly harms only a certain group in one instance does not transform governmental actions seeking redress, punishment, and deterrence for securities fraud and other violations into private actions for pecuniary advantage, or into actions merely on behalf of private parties. The Ninth Circuit recognized the distinction when it observed that "a civil action brought by a governmental entity under section 17200 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" *PG & E*, 433 F.3d at 1126 (quoting

**416**

*People v. Pacific Land Research Co.*, 20 Cal.3d 10, 141 Cal.Rptr. 20, 569 P.2d 125, 129 (1977)). The Ninth Circuit further stated that "repayment is not the primary object of the suit, as it is in most private class actions" even though restitution is being sought on behalf of private parties. *Id.* Therefore, we conclude that the Enforcement Action is not analogous to cases in which the government is, essentially, adjudicating private rights rather then addressing public harms.

### V. Conclusion

The bankruptcy court erred in concluding that the Enforcement Action is not a police power action within the meaning of 11 U.S.C. § 362(b)(4) after improperly examining the merits of the Enforcement Action and concluding that the purpose of the Enforcement Action is primarily pecuniary. Because each of the claims in the Enforcement Action are brought to protect public safety and welfare, rather than to protect Appellant's pecuniary interest in Appellees' property, the Enforcement Action is a police power action within the meaning of 11 U.S.C. § 362(b)(4) and should be exempt from the automatic stay.

***IT IS, THEREFORE, HEREBY ORDERED*** that the bankruptcy court's Order of September 13, 2010 denying Appellant's Police Power Exemption Motion is ***REVERSED*** and the matter is ***REMANDED*** to the bankruptcy court for further proceedings not inconsistent with this Order.

The Clerk shall enter judgment accordingly.